Hillsborough
No. 81-344

VIRGINIA BROWN & a.

v.

BEDFORD SCHOOL BOARD & a.

July 7, 1982

*Anne Richmond*, staff attorney, NEA–New Hampshire, by brief and orally, for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*Alan Hall, Katherine M. Hanna* and *Eugene M. Van Loan, III*, on the brief, and *Mr. Van Loan* orally), for the defendants.

DOUGLAS, J. This appeal is brought by two probationary teachers who were not rehired for teaching positions in the Bedford School District. They raise several issues: Whether they were entitled to receive a statement of reasons for their termination; whether they had a protected property interest in their employ-

ment; whether they were entitled to personal notice that their terminations would be discussed at a certain meeting of the Bedford School Board; and whether they had a "right to know" under RSA ch. 91-A that teacher nominations would be discussed at that meeting.

The plaintiffs, probationary employees in the Bedford School District, were employed pursuant to individual written contracts for the school year 1980–81. At a regularly scheduled school board meeting on March 9, 1981, an item on the agenda indicated that teacher nominations for the upcoming year would be considered. The defendants claim that they sent a copy of this agenda to the plaintiffs' representative, the president of the Bedford Teachers Association, in accordance with the plaintiffs' collective bargaining agreement. The plaintiffs were never personally notified that teacher nominations would be discussed. At the March 9 meeting, the board elected various teachers to probationary positions and continued certain tenured teachers. The two plaintiffs were not among those to be offered new contracts. See RSA 189:14-a.

Over a month after the plaintiffs were notified of nonrenewal, counsel for their exclusive bargaining representative, the Bedford Teachers Association, NHEA/NEA, asked the school board for a statement of reasons why the plaintiffs had not been rehired. The board responded: "It is the practice of the school board not to give reasons for the nonrenewal of teachers." In August, the plaintiffs filed a petition for a temporary injunction and a temporary restraining order which essentially sought the plaintiffs' reinstatement. The Superior Court (*Wyman*, J.) denied temporary relief, and this interlocutory appeal ensued.

■  The plaintiffs argue that they were entitled to a statement of reasons for nonrenewal. Tenured teachers—those who have been employed for three years or more—must be provided upon request with "reasons for failure to be renominated or reelected" and are permitted a hearing before the board. RSA 189:14-a (Supp. 1981). As we explained in *Petition of Gorham School Board*, 121 N.H. 878, 880–81, 436 A.2d 74, 76 (1981), probationary teachers are not extended this statutory protection. It could, however, be bargained for in a collective bargaining agreement.

■  RSA 189:13 provides that no teacher, whether probationary or tenured, may be *dismissed during* the contract period "without having previously been notified of the cause of such dismissal" and provided a full and fair hearing. It is clear from the statutory framework, however, that the plaintiffs were not being "dismissed," *see* RSA 189:13, but were simply not being "renominated" or "re-

elected." *See* RSA 189:14-a (Supp. 1981). Accordingly, the procedural protections set forth in RSA 189:13 did not attach.

Even though RSA ch. 189 may not grant them a right to a statement of reasons for termination, the plaintiffs argue that they are entitled to such a statement on due process grounds because their employment is a protected property interest. The United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564 (1972), addressed this argument stating that:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it . . . . Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

*Id.* at 577.

The Supreme Court in *Roth* concluded that the untenured, probationary teacher in that case was not entitled to a hearing because he had not proven that his employment rose to the level of a constitutionally protected property interest.

> "Thus, the terms of the respondent's appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment."

*Id.* at 578 (footnote omitted).

■ In the context of public employment, we have repeatedly reaffirmed that, as a matter of State law, public employment without more, such as a commission of office, does not rise to the level of a protected property right. See *Appeal of Parker*, 121 N.H. 986, 988, 437 A.2d 283, 284 (1981); *Colburn v. Personnel Commission*, 118 N.H. 60, 64, 382 A.2d 907, 909 (1978).

■■ This is not to say that probationary employees will never be afforded a right or remedy for wrongful termination of

employment. Although a governmental unit has almost unfettered power to discharge a probationary employee, it may not do so arbitrarily, illegally, capriciously, or in bad faith. *Appeal of William H. Oudens*, 122 N.H. 642, 642–43, 448 A.2d 1374, 1374 (1982); *Appeal of Hildegard Tamm*, 122 N.H. 646, 647, 448 A.2d 1373, 1373 (1982); *Appeal of Czeslaw Pawlus*, 121 N.H. 273, 274, 428 A.2d 487, 488 (1981); *Clark v. Manchester*, 113 N.H. 270, 275, 305 A.2d 668, 672 (1973). In the instant case, however, the teachers were not discharged or "dismissed," but were merely not hired for a future year; therefore, the above test is inapplicable.

The plaintiffs next argue that they were entitled to individualized, personal notice of the agenda item relating to teacher nominations which was discussed at the March 9, 1981, school board meeting under RSA ch. 91-A, the "right-to-know" law. RSA 91-A:2 II (Supp. 1981), sets forth all notice requirements for meetings of public agencies as follows:

> "[A] notice of *the time and place* of each such meeting, including an executive session, shall be *posted in 2 appropriate places* or shall be *printed in a newspaper* of general circulation in the city or town at least 24 hours, excluding Sundays and legal holidays, prior to such meetings."

(Emphasis added.) The plaintiffs contend that in spite of these specific legislative mandates, the public notice required by RSA 91-A:2 II (Supp. 1981) is not sufficient and that they should have been provided with personal notice of the defendants' March 9, 1981, meeting.

RSA ch. 91-A does not require personal notice in this situation, nor have the defendants agreed to provide such notification pursuant to a collective bargaining agreement. *See Signorino v. Thomson*, No. 85-345 (D.N.H. June 13, 1980). In fact, because the Bedford Teachers Association (BTA) is the plaintiffs' exclusive representative, the defendants are prohibited from discussing the terms and conditions of the plaintiffs' employment with them directly. *See* RSA 273-A:5. Personal notice would be inappropriate. Personal notice is also precluded by the plaintiffs' collective bargaining agreement.

The defendants and the BTA negotiated a master agreement for the period July 1, 1980, through June 30, 1982, which covered the terms and conditions of the plaintiffs' employment. Both parties were bound by the agreement. As a result of the negotiations, they agreed that the plaintiffs would be given *prior notice* of the specific

matters to be discussed at the defendants' meetings. Section D. of article XIX of the master agreement provides:

"Prior to each Board Meeting, an agenda will be sent to the President of the Bedford Teachers Association at an address which the Association places on file in the Superintendent's office."

The defendants assert that they complied with this provision by sending a copy of the agenda for the March 9, 1981, meeting to the president of the plaintiffs' exclusive representative during the week of March 2, 1981. That agenda mentioned that teacher nominations for the 1981–82 school year would be discussed.

██ The defendants are bound to provide notice in accordance with the parties' collective bargaining agreement. Through the mechanism of collective bargaining, public employees have the opportunity to expand upon or otherwise make binding agreements concerning rights which they feel may be granted to them by other provisions of law. "Non-tenured teachers who do not like the terms of New Hampshire's contracts can either bargain to change them or can seek employment in states where their terms are different." *Drown v. Portsmouth School District*, 435 F.2d 1182, 1187 (1st Cir. 1970) (citation and footnote omitted), *cert. denied*, 402 U.S. 972 (1971).

Of course, if no notice at all had been given to the plaintiffs constructively, RSA 91-A:2 II (Supp. 1981), or to their bargaining representative, a different question would be presented. *See Stoneman v. Tamworth School Dist.*, 114 N.H. 371, 375, 320 A.2d 657, 660 (1974); Douglas, *The New Hampshire Right to Know Law— An Analysis*, 16 N.H.B.J. 227, 234 (1975).

██ We note that the trial judge erred when he concluded that actions brought under 42 U.S.C. § 1983 must be class actions. A section 1983 claim in State court is neither mutually exclusive from, nor co-extensive with, a class action. *See Royer v. Adams*, 121 N.H. 1024, 437 A.2d 316 (1981).

We have considered the plaintiffs' remaining arguments and find them to be without merit.

*Affirmed.*

All concurred.