Public Employee Labor Relations Board
No. 82-074

# APPEAL OF TOWN OF PELHAM
## (New Hampshire Public Employee Labor Relations Board)

October 28, 1983

*Soule, Leslie, Bronstein & Zelin,* of Salem (*Robert P. Leslie* on the brief and orally), for the Town of Pelham.

*James J. Barry,* of Manchester, by brief and orally, for Local No. 1801, American Federation of State, County, and Municipal Employees.

DOUGLAS, J. The Town of Pelham (town) appeals, pursuant to RSA chapter 541, a ruling of the public employee labor relations board (PELRB) that the town committed an unfair labor practice when it voted to terminate James Hardy as a patrolman in the Pelham Police Department.

The Town of Pelham hired James Hardy as a Police Department Dispatcher on December 8, 1977. On May 15, 1979, his title was changed to Dispatcher/Patrolman by a vote of the board of selectmen (board). On May 13, 1980, the board voted to appoint Mr. Hardy as a full time patrolman.

The American Federation of State, County and Municipal Employees (AFSCME) was certified in 1980 as the exclusive bargaining representative for all patrolmen, sergeants and clerk/dispatchers of the Pelham Police Department. On May 26, 1981, the Town of Pelham and AFSCME, Local No. 1801, entered into their first collective bargaining agreement. The agreement was made retroactive, stating that it was to be in full force and effect from and after April 1, 1981.

On May 11, 1981, the board notified Mr. Hardy that he was being terminated as a patrolman. On May 13, 1981, AFSCME filed unfair

labor practice charges with the PELRB alleging a violation of RSA 273-A:5 in the termination. A hearing was held before the PELRB, at which the parties stipulated that Mr. Hardy was a member of the bargaining unit. In its decision and order dated August 4, 1981, the PELRB directed the parties to pursue the matter under the grievance procedure outlined in the collective bargaining agreement.

The grievance clause contains a series of procedures for the handling of disputes. The first step of the procedure provides that the issue be resolved by the chief of police. A grievance was filed in accordance with the terms of the collective bargaining agreement and on June 26, 1981, Ralph S. Boutwell, chief of police, recommended the reinstatement of Mr. Hardy. Four days later, the board of selectmen advised both the chief of police and AFSCME that the chief was without authority to reinstate Mr. Hardy. AFSCME then filed a second complaint with the PELRB against the town, alleging a violation of RSA 273-A:5 because of the board's failure to reinstate Mr. Hardy as recommended by Chief Boutwell.

Following a hearing at which all parties were represented, the PELRB found that the town had committed an unfair labor practice in its termination of Mr. Hardy as a patrolman. The PELRB further determined that Mr. Hardy was a permanent member of the police department and that compliance with the grievance procedure was accomplished by Chief Boutwell's reinstatement of Mr. Hardy as a patrolman. Accordingly, the PELRB ordered the immediate reinstatement of Mr. Hardy.

■ The town raises a number of questions for review, many of which are repetitive and only incidental to the essential issues. We will confine our review to what we have determined to be the town's principal arguments. *See Appeal of Beyer*, 122 N.H. 934, 938, 453 A.2d 834, 836 (1982); *Provencal v. Provencal*, 122 N.H. 793, 796, 451 A.2d 374, 376 (1982).

■■ The town argues that it was unreasonable for the PELRB to direct that the matter be resolved pursuant to the collective bargaining agreement. We begin our analysis by noting that our standard of review of PELRB determinations is very narrow. We have consistently stated that the legislature has vested the PELRB with initially defining and interpreting the terms and provisions of RSA chapter 273-A. *Appeal of City of Concord*, 123 N.H. 256, 257, 459 A.2d 285, 286 (1983); *Appeal of State Employees Ass'n*, 120 N.H. 690, 694, 422 A.2d 1301, 1304 (1980).

■■ Implicit in this authority is the PELRB's discretion to determine that a dispute involves a matter covered by a collective

bargaining agreement. Although subject to our review under RSA chapter 541, the findings of the PELRB upon all question of fact in collective bargaining matters are deemed *prima facie* lawful and reasonable. *Appeal of City of Concord*, 123 N.H. 256, 257, 459 A.2d 285, 286 (1983); *Appeal of the University System of N.H.*, 120 N.H. 853, 854, 424 A.2d 194, 195–96 (1980).

■■ The record before the PELRB contains a stipulation by the parties that Mr. Hardy was a member of the collective bargaining unit. The record further indicates that the collective bargaining agreement was in full force and effect from April 1, 1981. There is conflicting testimony as to whether the collective bargaining agreement applied to the situation at hand, but it is not the function of this court to engage in a *de novo* review of the evidence before the PELRB. *Keene State College Educ. Ass'n*, 119 N.H. 1, 3, 396 A.2d 1099, 1101 (1979). There is evidence to support the PELRB's conclusion that the matter should be resolved pursuant to the grievance procedure outlined in the collective bargaining agreement, and its determination was not contrary to law or clearly unjust or unreasonable. Accordingly, we hold that the town has not met the burden of proof required by RSA 541:13 to set aside the PELRB's decision.

The town next argues that although the board of selectmen agreed to have disputes resolved pursuant to the grievance procedure set out in the collective bargaining agreement, disputes concerning appointment and termination of police officers are excluded from the process. The substance of the town's argument is that the grievance procedure illegally delegates to the chief of police powers conferred exclusively on the board of selectmen.

In support of its position, the town relies on RSA 105:1, which provides that the board of selectmen may appoint police officers, and RSA 41:48, which prescribes the method of removal of police officers. The latter provision states that an officer may be removed by the selectmen after notice and hearing. It is the town's contention that the powers granted to the selectmen in these two statutory provisions cannot be delegated without legislative authorization. The town further relies on paragraph 17.2 of the collective bargaining agreement, which excludes from the grievance procedure any matter for which a specific method of review is prescribed and any matter which, according to law, is limited to the unilateral action of the selectmen. Based on these arguments, the town concludes that the grievance procedure is invalid because it delegates appointment and removal powers to the chief of police.

This court has not previously considered whether, under the Public Employee Labor Relations Act, RSA chapter 273-A, a town may

agree to refer to the grievance process matters statutorily conferred upon the municipality. In *Tremblay v. Berlin Police Union*, 108 N.H. 416, 421, 237 A.2d 668, 672 (1968), we held that a grievance clause providing for the arbitration of all unresolved disputes was not an unlawful delegation of a municipality's control of the police department. In that case, however, we found it controlling that the grievance clause in question contained a provision subjecting it to New Hampshire law.

In enacting the Public Employee Labor Relations Act, the legislature included a statement of policy in which it declared that it is the public policy of the State to promote harmonious and cooperative relations between public employers and their employees. Laws 1975, 490:1. In keeping with that policy declaration, the legislature has expressly mandated the inclusion of a grievance procedure in every collective bargaining agreement. RSA 273-A:4. The reasons for this statutory requirement are obvious. If a dispute arises as to the interpretation or application of the agreement, there must be a mechanism for resolving the dispute or else the agreement is meaningless.

Under RSA 41:48, when a board of selectmen seeks to remove a police officer, the officer is notified and afforded a hearing before the board. The board is both prosecutor and judge. Where the ultimate decision is made pursuant to the grievance process, however, the police officer is more likely to feel he has had a fair hearing, thus furthering the policy of harmonious and cooperative relations between public employers and employees.

The legislative history of RSA chapter 273-A indicates that the hiring, firing, demotion and promotion of an employee is within the scope of bargaining under the grievance clause. The legislative history provides in part:

"Sen. BRADLEY: Regarding the scope of bargaining, I see that this has been broadened to include terms and conditions of employment. That is potentially a very broad term. As I understand it, there is also a very broad general exception to exclude from terms and conditions so-called management rights, managerial policy. What I am interested in doing is flushing out if we can for the legislative history a little more concretely what is being reserved to managerial policy and management rights. I understand that the scope of bargaining in this will, for example, not include the hiring, the firing, the demotion, the promotion of employees?

Sen. JACOBSON: No, that is managerial policy, *except under the grievance procedure a person may lodge a grievance. For example, if a person is to be dismissed for some reason, he may lodge a grievance, and that may be heard.*

Sen. BRADLEY: Perhaps I already covered this when I said hire, fire, demote, promote, but it is clear isn't it that the scope of bargaining would not extend to the dismissal of a public employee?

Sen. JACOBSON: It would not, except under the terms of the grievance procedure."

N.H.S. JOUR. 1108–09 (1975) (emphasis added).

 After reviewing RSA 105:1 and 41:48 we conclude that these provisions do not preclude an agreement to refer disputes over police appointments and terminations to the grievance process. Further, there are no constitutional or statutory prohibitions against submission of these matters to the grievance process. Even if the board is not required to bargain over including appointment and termination matters in the grievance process, it is not prohibited from doing so. This conclusion finds support in our recent decision, *Appeal of Watson*, 122 N.H. 664, 448 A.2d 417 (1982). In that case, we considered the validity of a collective bargaining agreement clause which provided that any teacher, whether probationary or tenured, who was not renominated or re-elected, was to be provided written notification of the reasons for termination. Reaffirming our position that the legislature did not intend to provide probationary teachers with the same procedural protections as tenured teachers, we nevertheless concluded that, "nothing prevents collective bargaining agreements from providing probationary teachers with a statement of reasons for their termination when their contracts are not renewed." *Id.* at 667, 448 A.2d at 419. As we have previously stated, "through the mechanism of collective bargaining, public employees have the opportunity to expand upon or otherwise make binding agreements concerning rights which they feel may be granted to them by other provisions of the law." *Brown v. Bedford School Board*, 122 N.H. 627, 632, 448 A.2d 1375, 1377–78 (1982).

 In Article III of the collective bargaining agreement, the parties agreed that the town reserved the right to hire, promote, transfer, assign, retain, suspend, demote or discharge employees. In paragraph 3.2, however, the parties agreed that the union has the right to process grievances of its members as a result of management's exercising the above-mentioned rights. The board of select-

men, having chosen to bargain over these matters, must abide by the agreement it entered into. Grievance language specifically negotiated and agreed upon by public employer and employee is binding upon both. *Appeal of Berlin Board of Education*, 120 N.H. 226, 230, 413 A.2d 312, 314 (1980).

The town cites *Board of Educ. of Carroll Cty. v. Carroll*, 452 A.2d 1316 (Md. App. 1982), in support of its position that, absent statutory authority to the contrary, a local board cannot delegate its legislatively mandated authority even if it expressly does so in a collective bargaining agreement. In *Board of Educ. of Carroll Cty.*, the court held that a local board may not negotiate or delegate its statutory responsibility to determine tenure. Although the case is instructive, it can be distinguished from the case at bar because the decision rested on a Maryland statute which *prohibited* a local board from negotiating its tenure determinations. Therefore, it is not persuasive on the issue before us.

 We therefore hold that the Town of Pelham's refusal to reinstate Mr. Hardy was an unfair labor practice within the meaning of RSA chapter 273-A.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.