Hillsborough
No. 85-360

### SCHOOL DISTRICT #42 OF THE CITY OF NASHUA

v.

### MICHAEL MURRAY & a.

August 7, 1986

*Steven A. Bolton*, corporation counsel, of Nashua, by brief and orally, for the plaintiff.

*Emmanuel Krasner P.A.*, of Farmington (*Mr. Krasner* on the brief and orally), for the defendants.

SOUTER, J.   The defendants appeal from an order of the Superior Court (*DiClerico*, J.) enjoining them from seeking to arbitrate a dispute over the application of a collective bargaining agreement. We reverse.

As a public employer within the meaning of RSA 273-A:1, X, the plaintiff school district entered into a collective bargaining agreement (CBA) with the defendant Nashua Teachers' Union, Local 1044, AFT, NHFT, AFL-CIO. In administering the CBA, the union represented the individual defendant, Michael Murray, a guidance counselor who had been employed by the school district for some sixteen years at the time this litigation began.

When the school district placed Mr. Murray on probation for the 1983-84 academic year, the defendants claimed that the district had violated the CBA's requirement of just cause for any disciplinary action. The district denied any violation of the CBA, asserting that placement on probation was not discipline within the meaning of the CBA, but was rather a discretionary prerogative of management. *See* RSA 273-A:1, XI.

The defendants demanded to litigate their position through the CBA's grievance procedure, and after exhaustion of preliminary grievance mechanisms, they submitted the dispute to the American Arbitration Association in reliance upon the CBA's provision for arbitration. The school district then petitioned the superior court to enjoin arbitration, on the ground that the dispute was not arbitrable.

On November 14, 1983, the superior court granted a preliminary injunction. By motion dated January 12, 1984, the union moved for a hearing on the request for permanent injunction or, in the alternative, for entry of a permanent injunction so that it could appeal. *See* SUP. CT. RS. 7, 8. In April 1984, and again in August 1984, the court requested counsel to submit any further material they might have bearing on the propriety of a permanent injunction. On June 25, 1985, the court issued an order making the injunction permanent.

From this procedural history it may appear that the case is moot,

and insofar as the individual defendant's probationary status during the 1983–84 year is concerned, it is. It is undisputed, however, that his employment record notes his status for that year, and counsel at argument claimed that this is a continuing injury with potentially adverse consequences justifying continuance of the litigation. We believe that Mr. Murray is entitled to the benefit of the doubt on this point, especially in view of his counsel's thwarted efforts to obtain a timely final order in the superior court. Accordingly, we will take up the merits.

We are immediately confronted, however, with the difficult question of whether to apply our usual standards limiting the scope of appeals. In the normal course, we would deal only with the merits of the issues that the parties raised in the trial court: whether the plaintiffs had demonstrated such risk of irreparable harm as to entitle them to equitable relief, whether they had an adequate remedy at law, and whether the superior court correctly concluded on the merits that the subject of the grievance was not arbitrable.

■ To proceed this way, however, would require us to ignore a far more significant issue, but one which was not raised until this court raised it during oral argument: whether the public employee labor relations board is vested with exclusive jurisdiction to determine the question of whether the dispute is arbitrable. Normally we would decline to consider this issue for the very reason that the appellants failed to raise it below. *See Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983); *see also Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 328, 480 A.2d 149, 153 (1984) (issues should be raised at trial in order to give the trial forum an opportunity to reach sound conclusions and to correct alleged errors). The price for applying this principle, however, would be our review of the superior court's decision on the question of arbitrability, despite our belief that this question should not even reach this court without the benefit of the board's judgment in the first instance. For we are convinced that, in the absence of a contractual provision granting the arbitrator authority to determine arbitrability of a given dispute, the board has exclusive original jurisdiction over the threshold question of arbitrability.

■ Faced with this dilemma, we believe that respect for the board's jurisdiction should come first. The board is responsible in the first instance for articulating a coherent body of collective bargaining law to govern public employment. *See Appeal of Town of Pelham*, 124 N.H. 131, 134–35, 469 A.2d 1295, 1297 (1983). We would not give appropriate recognition to that responsibility if we were to consider the merits of an issue within the board's exclusive

original jurisdiction without providing an opportunity for the board to rule on it first.

We turn then to the issue whether the superior court has jurisdiction to determine the arbitrability of a dispute under a public employees' CBA, when a breach of the CBA would be an unfair labor practice subject to the exclusive jurisdiction of the board under RSA 273-A:6, I. The school district presses two arguments for superior court jurisdiction. It relies, first, on the authority of *Brampton Woolen Company v. Local Union 112*, 95 N.H. 255, 256, 61 A.2d 796, 797 (1948), and *Southwestern New Hampshire Transportation Co., Inc. v. Durham*, 102 N.H. 169, 173, 152 A.2d 596, 599 (1959), which held as a general rule that the scope of· an arbitration clause in a labor or collective bargaining agreement is a question of law for the superior court. The district argues, second, that unless this general rule is affirmed and applied to the present case, the district will have no opportunity to litigate the question of arbitrability until the union files an unfair labor practice charge against it, claiming a wrongful refusal to arbitrate. It makes the same argument, in other words, that this court accepted in *Brampton*: if the employer refuses to arbitrate in a case where arbitrability is in issue it risks a later finding that it breached the contract; if, to avoid that risk, it participates in arbitration, it risks ·a later finding that it waived its objection. *Brampton, supra* at 256, 61 A.2d at 797.

Suffice it to say here that this is a sound reason for providing some forum for litigating a threshold issue of arbitrability. It does not necessarily follow, however, that the superior court must be that forum, and there are two arguments for finding jurisdiction elsewhere.

■■ First, the defendants argue that the question of arbitrability is appropriately left as a threshold issue for the arbitrator, subject ultimately to superior court review when the parties, as in this case, have agreed to such review in accordance with RSA 542:1 (statutory authority for judicial review of arbitration, RSA 542:8, applies to arbitrator's award under labor contract, if the contract specifically so provides). In taking this position, however, the defendants forget that the extent of an arbitrator's jurisdiction depends upon the extent of the parties' agreement to arbitrate. *See Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582 (1960); *cf. Appeal of Berlin Board of Education*, 120 N.H. 226, 229–30, 413 A.2d 312, 314 (1980) (clear and express language of CBA evidences intent of parties; it was specifically negotiated and agreed upon and is binding upon both the public employee and employer). It is true, of course, that a contract may provide expressly that substantive

arbitrability will itself be subject to arbitration, *see Steelworkers v. Warrior & Gulf Co.*, *supra* at 583 n.7, or it may provide this implicitly by an arbitration clause written broadly enough to include the issue of arbitrability within its general subject matter, *cf. Drake Bakeries v. Bakery Workers*, 370 U.S. 254, 257 n.2 (1962). The CBA before us, however, does not so provide. It defines the scope of arbitration by referring to the subject of grievances, which in turn may involve "wages, hours, or other terms or conditions of employment." Arbitrability itself is not defined as a subject of the grievance procedure.

There is merit in the second argument, however, that the holdings of *Brampton* and *Southwestern Transportation* have been limited by the enactment of RSA chapter 273-A, governing public employees' collective bargaining, in cases to which that chapter generally applies. Thus RSA chapter 273-A should be read to provide the district with the right to litigate arbitrability before the board, without waiting to be charged with an unfair labor practice for refusing to arbitrate.

This argument derives force from a number of prior opinions of this court construing the jurisdiction and responsibility of the board; it would be prolix to cite them all, for a few will suffice. In *Appeal of Town of Pelham*, 124 N.H. at 131, 469 A.2d at 1295, we stated, not for the first time, that the legislature had invested the board with authority to define and interpret the terms of RSA chapter 273-A in the first instance, and we held that the board consequently had implicit authority "to determine that a dispute involves a matter covered by a collective bargaining agreement." *Id.* at 134–35, 469 A.2d at 1297. In *Appeal of Hooksett School District*, 126 N.H. 202, 204, 489 A.2d 146, 147 (1985), we reaffirmed this holding. Shortly thereafter we held in *Board of Trustees of the University System of New Hampshire v. Keene State College Education Association*, 126 N.H. 339, 493 A.2d 1121 (1985) that a specific CBA provision for superior court review of an arbitrator's award, as authorized by RSA 542:1, must yield to the board's jurisdiction to hear charges of unfair labor practices, unless one of the parties has begun a superior court appeal within thirty days of the award. We thus held that even when parties have agreed to superior court jurisdiction to review an arbitrator's award, that jurisdiction must be limited in order to give effect to the board's primary jurisdiction over public employees' CBAs. *Id.* at 342–43, 493 A.2d at 1124. Although *Keene State* involved litigation following an arbitration award, we see no basis in principle to limit the board's primary role when the dispute precedes arbitration, so long as the dispute raises an unfair labor practice charge over which the board has jurisdiction.

The jurisdictional issue therefore turns on the answer to this question: is a demand to arbitrate a matter falling outside the scope of a CBA's arbitration clause an unfair labor practice, so that the board has jurisdiction under RSA 273-A:6, I, to hear a complaint charging one party with making such an unauthorized demand? As already indicated, we answer yes, for the following reasons.

RSA 273-A:5 lists the unfair labor practices that the board has jurisdiction to redress. Although section 5 does not deal with arbitration in explicit terms, two general categories of unfair practices are arguably broad enough to cover demands and refusals to arbitrate. RSA 273-A:5, I(e) and II(d) make it an unfair labor practice to refuse to negotiate in good faith. A refusal to arbitrate might be treated as a refusal to negotiate in good faith, on the reasoning of *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. at 581, that a grievance procedure is an element of a continuous process of collective bargaining.

We rely, however, on the somewhat narrower category of unfair labor practice, breach of a collective bargaining agreement. RSA 273-A:5, I(h) and II(f). Because it is undisputed that a wrongful refusal to arbitrate may be litigated as a breach of a CBA, we cannot justify treating a wrongful demand to arbitrate any differently. For purposes of CBA administration there is no functional difference between a wrongful demand and a wrongful refusal of a legitimate demand. In each case, the wronged party must either waive what it believes is a legitimate position under the contract or run the risk of suffering a contract penalty.

■  Accordingly, we conclude that a wrongful demand should be treated as an unfair labor practice. The consequences that would follow from a contrary holding confirm our conclusion. If the wrongful demand could not be challenged directly before the board, then the party responding to such a demand would be forced either to seek a superior court injunction or to refuse to arbitrate and wait for the demanding party to go to the board with an unfair labor practice complaint. A decision to do nothing would risk a breach of the collective bargaining agreement, while a decision to seek superior court review would profoundly hamper the development of a consistent body of common law for interpreting public employees' CBAs. It is, however, simply too late to consider an interpretation that would allow for such a possibility. We have repeatedly recognized the legislature's intent to give the board a primary role in such matters, and we have made it clear that we will recognize exceptions to the board's primary position only when legislation demands it, as it did in the instance of the conflicting legislative

policies that we accommodated as best we could in *Keene State*. Because there is no such conflict here, we respect the intended primacy of the board's position by holding that an allegation of a wrongful demand to arbitrate charges an unfair labor practice, over which the board has exclusive original jurisdiction.

Because the court exceeded its jurisdiction, we vacate the injunction. If at this date the parties are still unable to agree upon a resolution of their prior differences, and arbitrability remains in question, the board will have jurisdiction to resolve the issue.

*Reversed.*

All concurred.