Public Employee Labor Relations Board
No. 88-112

## APPEAL OF CITY OF NASHUA, SCHOOL DISTRICT #42
### (New Hampshire Public Employee Labor Relations Board)

March 8, 1990

*Prunier, Nadeau & Leonard P.A.*, of Nashua (*Steven A. Bolton* on the brief and orally), for the City of Nashua, School District #42.

*Emmanuel Krasner P.A.*, of Farmington, by brief and orally, for the Nashua Teachers Union.

BATCHELDER, J. This appeal presents issues similar to those raised in *Appeal of Westmoreland School Board*, 132 N.H. 103, 564 A.2d 419 (1989). In this case, the New Hampshire Public Employee Labor Relations Board (PELRB) decided that the teacher involved had presented a grievable issue requiring the parties to proceed to arbitration in accordance with their collective bargaining agreement (CBA). The City of Nashua School District #42 (school district or district) appeals this conclusion pursuant to RSA 541:6, and we affirm.

The undisputed facts of this case are as follows. In March, 1986, the Nashua Board of Education decided not to rehire Agnes Lylis, a high school social studies teacher. Lylis was in her third year of teaching for the school district when she received notification of the board's decision. In deciding not to renew her contract, the board cited "serious concerns about [her] attendance record and its impact on instructional continuity." In particular, Lylis' evaluator noted that she had taken twenty-six sick days and two and one-half personal days in the preceding two and one-half school years. The parties do not dispute that the CBA covers Lylis, nor do they dispute that she did not take more sick or personal days than the CBA allowed.

The Nashua Teachers Union (NTU) sought review of the board's decision through the grievance provisions of the CBA. School officials and the board of education denied the grievance, maintaining that the decision not to renominate Lylis was a matter outside the scope of the CBA. In August, 1986, in accordance with this court's decision in *School District #42 of the City of Nashua v. Murray*, 128 N.H. 417, 514 A.2d 1269 (1986), the school district filed an unfair labor practice complaint against the NTU with the PELRB seeking an order to prevent the NTU from pressing its arbitration claim. The PELRB held a hearing in September, 1987, and in November, 1987, issued a decision directing the parties to arbitrate the dispute and dismissing the district's complaint.

In its order, the PELRB set forth the procedural history of the case, the NTU's principal arguments, and the undisputed facts mentioned above. Based on the arguments at the hearing, the PELRB determined that the issue before it was not whether Lylis' nonrenewal fell under RSA 189:14-a, but whether the CBA's

management rights clause, section 13:3, permitted the school board to take the action it did, or whether Lylis' use of sick leave was grievable under CBA Article III, the grievance and arbitration provision. After granting certain findings of facts and rulings of law requested by the school district, the PELRB concluded that Lylis' use of sick leave was grievable. Following the PELRB's denial of its motion for a rehearing, the district filed this appeal.

As we stated in *Appeal of Westmoreland School Board*, we will not set aside a PELRB order unless we find by a clear preponderance of the evidence that it is erroneous as a matter of law, unjust, or unreasonable. 132 N.H. at 105, 564 A.2d at 420; *Appeal of University of System of N.H.*, 131 N.H. 368, 370, 553 A.2d 770, 772 (1988). Moreover, while issues of contract interpretation are matters of law for this court to decide, we will not reverse an order to arbitrate unless we can say with positive assurance that the CBA's arbitration clause is not susceptible of a reading that will cover the dispute. *Appeal of Westmoreland School Board, supra* at 105, 564 A.2d at 421.

On appeal, the district raises three primary issues. First, the district argues that the PELRB failed to explain adequately the reasoning supporting its conclusions, allegedly in violation of RSA 541-A:20 (Supp. 1989) and our holding in *N.H.-Vt. Health Service v. Commissioner of Insurance*, 122 N.H. 268, 273, 444 A.2d 508, 510–11 (1982) (an agency is obligated to set forth its methodology and findings to allow for meaningful judicial review). The district contends that the PELRB's reference to the grievance and arbitration provisions of Article III, without more, was not sufficiently specific to allow it to know which of the twenty-three sections of that article the PELRB meant. The district also posits that the PELRB decision breeds suspicion and mistrust in violation of the policy of the Public Employee Labor Relations Act to promote harmonious labor relations.

Although we agree with the district that the PELRB could have been more forthright in stating the reasoning behind its decision, we disagree with its argument that the PELRB's order prevents meaningful judicial review. Our review of the hearing transcript reveals that the PELRB determined, after extended discussion among the parties and the board, that the sole issue to be determined was whether the parties had to proceed to arbitration. In its order, the PELRB set forth the essential arguments of the parties, and then apparently accepted the NTU's

position. Viewed in this context, we cannot say that the PELRB violated RSA 541-A:20 (Supp. 1989).

█ Further, the district's argument that the PELRB's reference to CBA Article III was not sufficiently specific is without merit. The PELRB order stated that the issue raised was grievable and directed the parties to arbitration, as CBA Article III required. That article describes the various steps of the grievance procedure, sections 3:1–3:12, as well as arbitration procedures to be followed when a dispute is not resolved in the grievance steps, sections 3:13–3:23. At the hearing, the district's attorney acknowledged that the right to arbitration exists in section 3:13, and Lylis' attorney referred to that section in his statements to the PELRB. Since the issue to be determined was whether arbitration was appropriate, and both parties specifically referred to arbitration rights under section 3:13, the district is disingenuous to claim now that it cannot understand which provisions of Article III the board referred to in its order.

The district's next arguments form the crux of this case. The district alleges that the PELRB, in contravention of the CBA, failed to find the violation of a specific provision of the CBA which section 3:13 requires for the parties to arbitrate. More specifically, the district maintains that it violated no CBA provision, nor could it have done so, because it retained in section 13:3 its statutory powers under RSA 189:14-a, I(a) to decide without NTU challenge whether or not to renew Lylis' contract. The district further suggests an interpretation of subsection 13:3(B), which describes its authority to hire and fire employees, that is consistent with its position on the decision not to renominate Lylis for another year of teaching. Finally, the district contends that it did not violate Article VI, pertaining to sick leave, because that article did not specifically restrict the district's management rights under either RSA 189:14-a or section 13:3.

In contrast, the NTU countered that the district's action violated CBA Articles I and VI, and section 13:3. Article I declares that the Nashua Board of Education recognizes the NTU as the exclusive representative of certain teachers for the purpose of "collective bargaining concerning wages, hours and other terms and conditions of employment." Section 6:1 grants those covered by the CBA eleven paid days of sick leave annually, cumulative to 110 days. The NTU took the position before the PELRB that failing to renominate Lylis for exercising rights granted under the CBA violated section 13:3 because management's rights were modified by Articles I and VI. Further, the NTU argued that Article XIII,

subsection 13:3(B) also limits the district's discretion by requiring just cause for the district to relieve or discipline a covered employee.

■ Because the agreement of the parties determines the jurisdiction of the arbitrator over the subject matter of the dispute, we look to the relevant portions of the contract to determine the appropriateness of the PELRB order. *Appeal of Board of Trustees of U.S.N.H.*, 129 N.H. 632, 635, 531 A.2d 315, 317 (1987). Article III of the CBA provides a statutorily mandated grievance procedure, *see* RSA 273-A:4, for disputes which involve: "A. An alleged violation of a term or provision of the existing contract," or "B. A grievance otherwise arising out of the employer-employee relationship involving wages, hours or other terms or conditions of employment." If a grievant processes a dispute through the various steps without reaching settlement, the NTU may submit the grievance to arbitration. Matters going to arbitration must involve the "interpretation or application of a specific provision" of the CBA.

Section 13:3, the management rights provision, provides in pertinent part as follows:

> "The UNION recognizes the following responsibilities, rights, authority, and duties of the BOARD, except as they are modified by provision of this Agreement.
>
> The BOARD hereby retains and reserves unto itself, without limitations, all power, rights, authority, duties and responsibilities conferred upon and vested in it by the Law and Constitution of the State of New Hampshire, and of the Charter of the City of Nashua;
>
> A. to the executive management and administrative control of the District and its properties and facilities;
>
> B. to hire, promote, transfer, assign and retain employees in positions with the District and to suspend, demote, discharge or take other disciplinary action against employees for just cause, to relieve employees for just cause, to relieve employees from duty because of lack of work or other legitimate reasons."

In its order, the PELRB stated that the issue before it was not whether RSA 189:14-a covered the nonrenewal of Lylis' contract, but whether her nonrenewal fell under section 13:3, the management rights provision, or whether the use of sick leave was a grievable matter under Article III. RSA 189:14-a, I(a) provides that

teachers who have taught in the same district for one year or more shall be notified in writing on or before March 31 if they are not to be renominated or reelected, *see Brown v. Bedford School Board,* 122 N.H. 627, 629–30, 448 A.2d 1375, 1376 (1982) (distinguishing between not renominating a teacher under RSA 189:14-a and dismissing a teacher under RSA 189:13), and that teachers with three or more years of teaching are entitled to notice, and a hearing and a statement of reasons for their non-renomination, if requested, RSA 189:14-a, I(b). In the school district's view, this statute ends the matter. The district contends that Lylis received all the procedural protection to which she was entitled by receiving timely notification of the decision not to renominate her for another year of teaching. According to the district, section 13:3, which preserves management's rights granted under State law, encompasses without restriction the minimal requirement of notification to non-tenured teachers under RSA 189:14-a, I(a).

Unfortunately for the district, section 13:3 is not as clearcut as it would like to have us believe. The section begins by stating that "[t]he UNION recognizes the following responsibilities, rights, authority, and duties of the BOARD, *except as they are modified by provision of this Agreement.*" (Emphasis added.) Given this language, and the NTU's arguments that the district's action denied Lylis the use of sick leave benefits granted in section 6:1 to members of the bargaining unit described in Article I, we cannot say with positive assurance that the dispute here does not involve the interpretation or application of specific provisions of the CBA. The PELRB's conclusion was, therefore, reasonable.

The district contends, however, that neither section 6:1 nor any other contractual provision specifically restricts its ability to apply RSA 189:14-a under the management rights clause. We need not take such a cramped view of the CBA to determine that this case involves a genuine issue of contract interpretation which the parties have agreed to arbitrate. The CBA's grievance procedure covers grievances involving an "alleged violation of a term or provision of the existing contract," or a "grievance otherwise arising out of the employer-employee relationship involving wages, hours or other terms or conditions of employment." A disagreement about the use of sick leave is, at least, one involving "other terms or conditions of employment." The PELRB order to arbitrate was reasonable.

In *Appeal of Westmoreland School Board,* we held that the failure of the Westmoreland School Board to renominate or re-elect a non-tenured teacher in her second year was not grievable

pursuant to the collective bargaining agreement. 132 N.H. at 109, 564 A.2d at 423. The rationale behind that decision is that the Westmoreland School Board, in failing to renominate or re-elect pursuant to RSA 189:14-a, did not implicate a contractual dispute or an alleged violation, misinterpretation, or misapplication of the collective bargaining agreement. *Id.* at 109, 564 A.2d at 422 (*see* RSA ch. 273-A). In contrast, the facts surrounding this case, namely, the declared justification supporting the Nashua School Board's failure to renominate or reelect, necessarily gives rise to genuine issues of contractual interpretation and dispute. The Nashua School Board, in supporting its decision not to renominate or re-elect on the fact that an employee used twenty-six sick days in two and one-half years, has, if by no more than implication, alleged an abuse of Article VI of the CBA, governing sick leave. Such an alleged abuse of a term or condition of employment requires resolution by the grievance process. To hold otherwise in this case, where a specific benefit accorded a teacher under a CBA is alleged to have been violated by the school board, would presumptively deny probationary teachers the benefits of the contract.

The district also argues that subsection 13:3(B) evidences the district's retention of its statutory authority not to retain non-tenured teachers. This provision states that the board has the power "to hire, promote, transfer, assign and retain employees in positions with the District and to suspend, demote, discharge or take other disciplinary action against employees for just cause, to relieve employees for just cause ...." The district contends that the authority to "retain" necessarily implies the authority not to retain, and further, that such authority is not limited by the requirement of the just cause language of the subsection. Following from this premise, the district suggests that the distinction between the right to retain or not retain teachers and to discharge them for just cause is the same as the difference in RSA 189:14-a and RSA 189:13 between non-renomination and dismissal. *See Brown v. Bedford School Board*, 122 N.H. at 629–30, 448 A.2d at 1376. The NTU disputes these assertions and maintains that the just cause provision limited the district's authority not to renominate a teacher.

Whether the district or the NTU is correct is a matter for the arbitrator to decide. The district's arguments would require us to go beyond determining whether the parties agreed to arbitrate this dispute and would require us to interpret the substantive provisions of the contract. *See AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649–50 (1986) (courts should not rule on the

potential merits of the underlying claims); *see also Appeal of Westmoreland School Board*, 132 N.H. at 109, 564 A.2d at 423. Such a practice would undermine the effectiveness of the arbitration clause. Thus, the district's arguments, on which we express no opinion, should be directed to an arbitrator.

Finally, the district complains that the PELRB's order was erroneous because its findings and rulings contradicted its ultimate order. The thrust of this argument is that because the PELRB granted the district's request for rulings that an agreement to arbitrate a matter must be express, direct and unequivocal, and that no specific provision of the CBA restricts the school district in the renomination or reelection of teachers, the PELRB could not have ordered the parties to arbitrate consistently with these findings. We disagree, for the reason that, as we have stated above, the PELRB reasonably could have found that the utilization of sick leave was a matter involving the application or interpretation of specific provisions of the CBA.

*Affirmed.*

THAYER, J., with whom SOUTER, J., joined, dissented; the others concurred.

THAYER, J., dissenting: We held in *Appeal of Westmoreland School Board*, 132 N.H. 103, 109, 564 A.2d 419, 423 (1989) that the failure of a school board to renominate a non-tenured teacher was not grievable pursuant to the collective bargaining agreement (CBA). Our holding in that case was based on RSA 189:14-a, I(a), which requires school districts only to provide written notice on or before March 31 to teachers who have taught in that district for one or more years that they will not be renominated or reelected. *Compare* RSA 189:14-a, I(b) (any teacher who has taught for three or more consecutive years is entitled to hearing and reasons for failure to be renominated or reelected). The facts of the case before us do not differ from the facts of *Westmoreland* except that here the board furnished the non-tenured teacher with a reason for not renominating her. Nothing in RSA 189:14-a or the CBA indicates that if a non-tenured teacher is not renominated or reelected, and reasons are given therefor, the school board is then required to provide the teacher with a hearing. However, the majority holds that "the declared justification supporting the Nashua School Board's failure to renominate or reelect necessarily gives rise to genuine issues of contractual interpretation and dispute." Because I believe that RSA 189:14-a, I(a), as interpreted by *Westmoreland*, dictates the opposite conclusion, I respectfully dissent.

Article III of the CBA provides that there must be an "alleged violation of a term or provision of the existing contract" or a "grievance otherwise arising out of the employer-employee relationship involving wages, hours or other terms or conditions of employment" before a grievant can resort to the grievance/arbitration process. The school district does not dispute that Lylis would be entitled to the grievance process if she were penalized during the contract year for taking the number of sick days to which she was contractually entitled during the two-and-one-half years that she taught. However, Lylis claims that her rights under the CBA alter the statutory requirements of RSA 189:14-a, I(a).

The school board is not prohibited from deciding not to renominate Lylis based on the fact that the continuity of her teaching has been disrupted due to the number of sick days she has used. Indeed, the school board has the unbridled authority to choose not to renominate a non-tenured teacher, and is not required to provide the teacher with a hearing and reasons for its decision. *See* RSA 189:14-a, I(a). As the majority points out, the CBA provides that "[t]he BOARD hereby retains and reserves unto itself, without limitations, all power, rights, authority, duties and responsibilities conferred upon and vested in it by the Law and Constitution of the State of New Hampshire...." The fact that the school board in this case chose to explain the reasons for its decision does not automatically entitle Lylis to initiate the grievance process.

Lylis does not argue that she was denied compensation for the sick leave to which she was contractually entitled under section 6:1 of the CBA. If this were the issue before us, I would reach a different conclusion. However, because the school board has the statutory right to choose not to renew a non-tenured teacher's contract without providing a hearing and statement of the reasons, I can say with positive assurance that the CBA's arbitration clause is not susceptible to a reading that will cover the dispute, *Appeal of Westmoreland School Board,* 132 N.H. at 106, 564 A.2d at 421, and I would hold in this case that Lylis has no right to invoke the grievance procedure.

Even if the majority is correct and the grievance process is available to determine whether or not Lylis violated Article VI of the CBA, dealing with sick leave, she is still not entitled to be renominated. *See* RSA 189:14-a, I(a). If the result of the grievance procedure were that Lylis did not abuse the sick leave policy, the school board would be required only to delete the reason gratuitously given for Lylis' non-renomination. If, on the other hand, the outcome of the grievance procedure were that Lylis did

abuse the policy, the reason given for her non-renomination would remain. In any event, if the school board unilaterally deletes the reason for Lylis' non-renomination, it would resolve the controversy.

For these reasons, I would reverse the decision of the Public Employee Labor Relations Board.

SOUTER, J., joins in the dissent.