Public Employee Labor Relations Board
No. 2002-593

### APPEAL OF POLICE COMMISSION OF THE CITY OF ROCHESTER
### (New Hampshire Public Employee Labor Relations Board)

Argued: March 13, 2003
Opinion Issued: May 16, 2003

*Flygare, Schwarz & Closson, PLLC*, of Exeter (*Daniel P. Schwarz* on the brief and orally), for the petitioner.

*Morris & Phillips*, of Hampton (*Peter C. Phillips* on the brief and orally), for the respondent.

DALIANIS, J. The petitioner, the Police Commission of the City of Rochester (Commission), appeals a New Hampshire Public Employee Labor Relations Board (PELRB) ruling in favor of the respondent, the International Brotherhood of Police Officers Local 580 (Union), finding that the Commission committed unfair labor practices (ULPs) in violation of RSA 273-A:5, I(e), (g) and (h) (1999). On appeal, the Commission argues that the PELRB erred by: (1) determining that the 1999-2000 CBA governed whether it had the right to appeal the arbitrator's award under RSA chapter 542; and (2) determining that the Commission had agreed to grant the arbitrator, rather than the PELRB, jurisdiction to determine the issue of arbitrability by its agreement settling the Union's original ULP. We affirm in part and vacate in part.

The parties stipulated to the following facts. On March 20, 2000, Captain David Dubois of the Rochester Police Department ordered Officers Timothy Brown and Thomas Blair to disclose the source of a rumor pertaining to Rochester Police Commissioner Paul Brown's role in the investigation of a complaint against the officers. The next day, Officers Brown and Blair refused to disclose the source of the rumor. In response, Captain Dubois recommended a five-day suspension for insubordination. In addition, as a result of the complaint investigation, Captain Dubois recommended an additional five-day suspension. He also recommended, in what he viewed as a personnel decision, reassignment of the officers from the detective bureau to the patrol division. These recommendations were accepted by the Police Chief.

In accordance with the collective bargaining agreement then in effect (1999-2000 CBA), the officers filed a grievance with the Commission. The 1999-2000 CBA was effective through June 30, 2000. After the 1999-2000 CBA expired, but while the officers' grievances were pending before the Commission, the Commission and the Union reached a tentative agreement on a successor collective bargaining agreement (2000-2003 CBA). The 2000-2003 CBA was executed by the parties on September 14, 2000, with an effective date of July 5, 2000. While the 1999-2000 CBA provided for final and binding arbitration, the 2000-2003 CBA included a new provision under which a party could seek judicial review of an arbitration award under RSA chapter 542. There was no specific discussion between the parties as to whether the new provision would apply to the officers' pending grievance.

On or about July 30, 2000, the Commission upheld the five-day suspension for insubordination, upheld the reassignment, and reduced the five-day suspension from the complaint investigation to a written warning. On August 15, 2000, the Union requested arbitration on behalf of the officers regarding the five-day suspension for insubordination and the written warning. On or about October 30, 2000, the Union filed an amended ULP against the Commission challenging the officers' reassignment. The Commission objected, arguing that the reassignment was permitted by the 1999-2000 CBA in the sole discretion of the Commission.

On December 18, 2000, the Union and the Commission reached an agreement whereby the ULP would be withdrawn and the issues raised and relief sought by the Union "may be asserted before the Arbitrator." The parties settled the grievance with regard to the written warning issued to the officers and on March 9, 2001, submitted the following issues to the arbitrator:

> (a) Whether the Rochester Police Commission acted in accordance with the contract between the Commission and [the Union] when it imposed a five (5) day suspension without pay against Thomas Blair and Timothy Brown for insubordination?
>
> If not, what shall be the remedy?
>
> (b) Whether or not the decision of the Chief of the Police Department to remove Thomas Blair and Timothy Brown from the Investigative Services Bureau to the Patrol Services Bureau is arbitrable?

The parties submitted only the 1999-2000 CBA to the arbitrator for consideration. The arbitrator sustained the Union's grievance on the five-

day suspensions and ruled that the matter of the reassignments was arbitrable. The Union sought arbitration on the merits of the reassignment issue, but the Commission refused, arguing that the PELRB, not the arbitrator, must determine arbitrability. On September 11, 2001, the Commission filed a petition in equity in Strafford County Superior Court to vacate and/or remand the arbitrator's award pursuant to RSA chapter 542.

The Commission also filed a ULP with the PELRB in regard to the Union's seeking to arbitrate the reassignment issue, and the Union filed a counter-ULP regarding the Commission's refusal to arbitrate the reassignment issue on the merits and the Commission's superior court filing. The PELRB held, among other things, that the Commission had committed the following ULPs: (1) failing to implement the arbitrator's award by appealing the award in superior court in breach of the 1999-2000 CBA and the obligation to bargain in good faith in violation of RSA 273-A:5, I(e), (g) and (h); and (2) refusing to arbitrate the reassignment issue on the merits in breach of its agreement to submit the question of arbitrability to the arbitrator in violation of RSA 273-A:5, I(e) and (g). The Commission filed a motion for rehearing, arguing that the PELRB erred in both ULP findings. The PELRB denied the motion, and this appeal followed.

■ "When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of State of N.H.*, 147 N.H. 106, 108 (2001) (quotation omitted). Failing to comply with an arbitrator's award may constitute a ULP. *See Bd. of Trustees v. Keene State Coll. Educ. Assoc.*, 126 N.H. 339, 341-42 (1985). This conclusion stems from the statutory mandate that a breach of a CBA, *see* RSA 273-A:5, I(h), or a breach of the obligation to negotiate in good faith, *see* RSA 273-A:5, I(e) and (g), may constitute a ULP.

The Commission first argues that it did not commit a ULP by filing an appeal of the arbitrator's award with the superior court because the 2000-2003 CBA was in effect at the time of the award and expressly granted RSA chapter 542 appeal rights. The Commission points to article twenty-eight of the 2000-2003 CBA, which states that "[t]he provisions of this Agreement will be effective as of July 5, 2000, supplementing and superceding [*sic*] the prior wages, hours and other economic benefits, except as otherwise herein provided," and argues that the appeal rights in the 2000-2003 CBA must apply to appeals from awards issued after July 5, 2000. The Commission argues that it is unreasonable and unjust to apply

the grievance procedures in the 1999-2000 CBA when the parties mutually agreed to amend the procedures in the 2000-2003 CBA.

■ The PELRB held that the 1999-2000 CBA governed the rights of the parties in respect to the Union's grievance. The PELRB determined that the date the discipline was first imposed was the event that should govern which CBA applied because, under article five of the 1999-2000 CBA, that event began the procedural steps that the aggrieved party must follow in pursuing the grievance. The PELRB held that the date of the disciplinary action "becomes the date from which the aggrieved knows about the type of and ramifications from the discipline which has been imposed and from which the aggrieved has a given number of days in which to file an objection or appeal . . . . This is the date from which rights flow or expire." Because the 1999-2000 CBA stated that the parties were bound by arbitration and did not permit an appeal under RSA chapter 542, the PELRB held that the Commission's refusal to arbitrate violated the CBA and was a ULP.

We conclude that the Commission has failed to prove that this ruling is unjust or unreasonable. While the Commission is correct that the 2000-2003 CBA became effective on July 5, 2000, and superseded the 1999-2000 agreement with regard to "wages, hours and other economic benefits," the agreement contained no provision dealing with grievances pending as of July 5. The Commission presented no evidence that the parties agreed to or intended to apply the appeal rights in the 2000-2003 CBA to grievances arising under the 1999-2000 CBA. In fact, contrary to the Commission's claim, it submitted the 1999-2000 CBA to the arbitrator for her determination, despite the existence of the 2000-2003 CBA at the time of the arbitration. Thus, the Commission recognized that the 1999-2000 CBA controlled the grievance proceeding then before the arbitrator. Moreover, the 1999-2000 CBA states that "any differences between the Parties on matters relative to this Agreement shall be settled by the means herein provided," which did not include any right to an RSA chapter 542 appeal. If the 1999-2000 CBA governed the matter before the arbitrator, as the Commission recognized, then it is not unjust or unreasonable to conclude that the 1999-2000 CBA would also control the procedural rights of the parties.

■ The Commission further argues that the PELRB violated RSA chapter 541-A when it determined that the 1999-2000 CBA governed the Commission's appeal rights because the PELRB implemented a rule without following the proper rule-making procedures. A "rule" is defined as:

each regulation, standard, or other statement of general applicability adopted by an agency to (a) implement, interpret, or make specific a statute enforced or administered by such agency or (b) prescribe or interpret an agency policy, procedure or practice requirement binding on persons outside the agency, whether members of the general public or personnel in other agencies.

RSA 541-A:1, XV (Supp. 2002). Rules must be adopted in accordance with RSA chapter 541-A to be valid. *See Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 592-93 (2000); *see also* RSA 273-A:2, VI (PELRB may make, in the manner prescribed by RSA chapter 541-A, such rules as may be necessary to carry out the provisions of RSA chapter 273-A). The Commission argues that the PELRB's decision created a generally applicable policy, and because the PELRB failed to follow the proper rule-making procedure, it invalidly adopted a rule. We disagree. The PELRB tailored its ruling to resolve the specific dispute between the parties. The PELRB repeatedly cited contract provisions of the 1999-2000 CBA in rendering its decision and interpreted them in light of the relevant facts and circumstances of this particular case. The PELRB's decision neither expressly nor impliedly established a uniform standard applicable to other disputes or CBAs, and thus did not trigger the procedural requirements of RSA chapter 541-A. *See Appeal of Nationwide Ins. Co.*, 120 N.H. 90, 93 (1980).

The Commission next argues that it did not commit a ULP by refusing to arbitrate the reassignment issue on the merits because the PELRB, not the arbitrator, had jurisdiction to determine whether the issue was arbitrable. The PELRB held, among other things, that the Commission's failure to follow the arbitrator's award was a breach of its agreement to arbitrate the issue and was, therefore, a ULP.

The Commission argues that absent a contractual provision in the CBA granting the arbitrator jurisdiction to determine arbitrability, the PELRB has exclusive original jurisdiction over the issue. The Commission cites our holding in *School District #42 v. Murray*, 128 N.H. 417, 419 (1986), recently discussed in *Appeal of Belknap County Commissioners*, 146 N.H. 757, 761 (2001), where we stated that "in the absence of a contractual provision granting the arbitrator authority to determine arbitrability of a given dispute, the [PELRB] has exclusive original jurisdiction over the threshold question of arbitrability." *Murray*, 128 N.H. at 419. The Commission argues that an agreement outside of the CBA is insufficient to grant the arbitrator jurisdiction over the issue, rendering the arbitrator's

decision in this case void. We do not share the Commission's narrow interpretation of our holding in *Murray*.

In *Murray*, we stated that "[i]t is true, of course, that a contract may provide expressly that substantive arbitrability will itself be subject to arbitration," *Murray*, 128 N.H. at 420-21, but we did not require that the agreement be within the CBA. Rather, we recognized that the "extent of an arbitrator's jurisdiction depends upon the extent of the parties' agreement to arbitrate." *Id.* at 420. The overriding concern is "whether the contracting parties have agreed to arbitrate a particular dispute," *Appeal of Westmoreland School Bd.*, 132 N.H. 103, 109 (1989), not whether the agreement is within the CBA. Thus, "the parties may agree to submit even the question of arbitrability to the arbitrator for decision," *George Day Const. v. United Broth. of Carpenters*, 722 F.2d 1471, 1474-75 (9th Cir. 1994), "even though [the agreement] is collateral to the collective bargaining agreement," *id.* at 1475. Where the parties "clearly and unmistakably submitted the issue of arbitrability to the arbitrator without reservation," *Vic Wertz Distributing v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990) (quotation omitted), the arbitrator will have authority to render a decision on the issue.

Here, the Commission granted the arbitrator the authority to decide the arbitrability of the reassignment issue. The Commission and the Union settled the Union's first ULP claim and agreed to submit the following question to the arbitrator: "Whether or not the decision of the Chief of the Police Department to remove Thomas Blair and Timothy Brown from the Investigative Services Bureau to the Patrol Services Bureau is arbitrable?" Moreover, the parties submitted the 1999-2000 CBA for consideration, which did not reserve the question of arbitrability for the PELRB, but rather provided for final and binding arbitration of disagreements arising out of the interpretation of the agreement. Thus, the Commission agreed to grant the arbitrator authority to decide the issue of arbitrability and in no way reserved the determination for the PELRB.

■ We agree with the PELRB that the Commission's agreement to arbitrate the arbitrability of the reassignment issue necessarily obligates the Commission to arbitrate the issue on the merits. In its settlement agreement with the Union, the Commission agreed to submit to the arbitrator "the issues raised and relief sought by the Union," which included the reassignment issue. Once the arbitrator determined that the reassignment issue was indeed arbitrable, the Commission was obligated to proceed with arbitration of the issue on the merits. To hold otherwise would deprive the Union of the benefit of the negotiated settlement which

expressly permitted the Union to submit the reassignment issue to arbitration. Accordingly, the PELRB ruling declaring that the Commission's failure to arbitrate the issue on the merits is a ULP is neither unjust nor unreasonable. *See Appeal of Belknap*, 146 N.H. at 761 (refusal to arbitrate may constitute a ULP).

 Finally, we agree with the PELRB that the arbitrator's ruling on arbitrability is not ripe for PELRB review. The Commission essentially is seeking interlocutory review by the PELRB of the arbitrator's award. Permitting such review would delay arbitration of the grievance on the merits and subject the parties to the expense of PELRB and judicial review. "The primary purpose served by the arbitration process is expeditious dispute resolution." *Fradella v. Petricca*, 183 F.3d 17, 19 (1st Cir. 1999); *see also Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir. 1980) (arbitration provides quick and efficient resolution of disputes, thereby reducing costly litigation and delay to both the parties and the courts); *Dutson v. Nationwide Mut. Ins. Co.*, 383 A.2d 597, 599 (R.I. 1978) ("The whole purpose of arbitration is to provide an alternative procedure whereby two or more parties can finally resolve their differences in an expeditious and economical proceeding."). Allowing a party to contravene the purpose behind arbitration by seeking interlocutory review where it has agreed to submit to the arbitration process would not be in accord with the legislative purpose of RSA chapter 273-A of promoting harmonious and cooperative labor relations. *Cf. Nashua Teachers Union v. Nashua School Dist.*, 142 N.H. 683, 686 (1998).

Despite ruling that the arbitrator's award on arbitrability was not ripe for review, the PELRB apparently reviewed and affirmed the award. Because we hold that the issue was not ripe for review, we vacate that portion of the PELRB ruling. In light of our holding, we need not reach the parties' arguments regarding the substance of the PELRB's review of the arbitrator's award nor do we express any opinion on whether the award is, in fact, subject to PELRB review.

*Affirmed in part and*
*vacated in part.*

BROCK, C.J., and BRODERICK and DUGGAN, JJ., concurred.