Hillsborough,
No. 4744.

SOUTHWESTERN NEW HAMPSHIRE TRANSPORTATION CO., INC. & a.

*v.*

ROLAND DURHAM & a.

Argued May 6, 1959.

Decided June 30, 1959.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Charles J. Dunn* (*Mr. Dunn* orally), for the plaintiffs.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the defendant Chauffeurs', Teamsters' & Helpers' Local Union No. 633, and the four individual defendants.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Kimon S. Zachos* (*Mr. Zachos* orally), for the defendant General Transportation Arbitration Board of New Hampshire.

KENISON, C. J.   In this state the arbitration of disputes statute (RSA ch. 542) applies to arbitration agreements between employers and employees only if "such agreement specifically provides that it shall be subject to the provisions of this chapter." RSA 542:1. The collective bargaining agreement in this case is subject to the provisions of RSA ch. 542 by its express terms.   This brings into play RSA 542:8 which empowers the court to confirm an award and also provides that the court may correct or modify arbitration awards (1) "for plain mistake"; or may vacate them (2) "for fraud, corruption, or misconduct by the parties or by the arbitrators," (3) "or on the ground that the arbitrators have exceeded their powers."   Only the first and third grounds are advanced in this proceeding.

The relevant part of Article VIII of the collective bargaining agreement establishes the General Transportation Arbitration Board with power to decide "Any dispute or grievance . . . with respect to wages, hours of work and all other conditions of employment for persons employed within the bargaining unit covered by this Agreement, and arising during the term of this Agreement." Paragraph (g) of the article contains the following proviso:  " . . . except that the Board may render no decision that conflicts with or exceeds the scope of the Agreement."

While the scope of an arbitration clause in a collective bargaining agreement presents a question of law for the court (*Brampton Woolen Co.* v. *Local Union*, 95 N. H. 255), we must not lose sight of the principle that not all contracts are the same and each one must be interpreted in the light of its purpose and policy.   Thus

in *Brampton, supra,* it was held that under the collective bargaining agreement vacation pay to members of the labor union would be normally considered part of their wages even though the agreement did not specifically so state. Accordingly, it was held that the dispute was arbitrable. In this jurisdiction it is recognized that some contracts may be "consummated with greater dispatch, more informality, and less meticulous detail than would be required of a municipal bond issue or a complicated corporate contract. Both are and must be definite but the former may be in shorthand expression for its well understood terms in the custom of the trade." *State* v. *Del Bianco,* 96 N. H. 436, 439.

The scope of interpretation necessary for a contract to purchase a horse or sell an automobile would be more confined than that of a collective bargaining agreement which involves multiple transactions, many people, and many problems under a continuing arrangement for arbitration and which inevitably will give rise to some unforeseen disputes that must be resolved within the general framework of the basic agreement. It is difficult, if not impossible, to try in advance to tie square knots for all the bundles of rights and privileges of both labor and management that are collected in the collective bargaining package. That is why successful and practical arbitrators in reaching their decisions must implement them with something more than a dictionary and a treatise on contracts. 6 Williston, Contracts (rev. *ed.* 1938) *s.* 1929. Thus there will be occasions when the arbitrators may consider "the generally accepted practice in industry and the whole agreement between the parties" in reaching their decision. *Franklin Needle Co.* v. *Labor Union,* 99 N. H. 101, 105. This problem is thoroughly canvassed in a competent manner in Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1490-1500 (1959).

In the present case it is necessary to determine the meaning of the proviso in the arbitration clause that the board "may render no decision that conflicts with or exceeds the scope of the Agreement." It seems reasonably clear that this proviso was not intended to deny the arbitration board power to render final and binding decisions on simple questions of fact such as whether an employee quit his job or was physically unable to perform it. So far as we are aware it is not the practice of courts to require a retrial of the facts which the arbitrators have already decided. To do so would destroy the value of grievance arbitration and

would give the arbitration award the effect of a preliminary finding only rather than that of a final and binding decision which the collective bargaining agreement calls for. The arbitration clause was intended to establish an expert but informal tribunal for the resolution of questions of fact arising in the administration of the collective bargaining contract. Issues which were raised, or could have been raised, before the arbitration board are not to be retried in the Superior Court.

The Durham award which is representative of the others, illustrates these issues. The plaintiffs contend that Durham quit his job within the meaning of Article III (d) and (f) when he left his truck in Wilton and therefore the arbitration board exceeded its power when it made an award granting him relief. The arbitration board reinstated Durham to his former position on the seniority roster "with such earning opportunity as may be available, according to his seniority, ability and willingness to perform such work," but did not award him any back pay. The plaintiffs' contention raises questions of fact and contract interpretation which were, and certainly could have been, raised before the arbitration board. There was a question of fact whether Durham left his truck on account of physical inability to carry on his duties. Even if Durham had left his work without strict compliance with requirements, there would be a further question of contract interpretation whether his leaving was a quit or a leave of absence within the meaning of Article III (d) and (f). The plaintiffs' offer of proof is an attempt to relitigate these questions before the Superior Court.

In the present collective bargaining agreement there was no specific provision which reserved questions of law for the court except as provided by statute nor was there any provision that required that the award be set aside because of errors of fact or law made by the arbitrators. Since the questions of fact and contract interpretation in the Durham case were covered by the arbitration agreement there is no occasion for vacating the award for the introduction of the evidence now offered. See Cox, Legal Aspects of Labor Arbitration in New England, 8 Lab. Arb. J. 5, 8 (1953); *Sanborn* v. *Murphy,* 50 N. H. 65.

The Durham award is attacked on the additional ground that it conflicts with Article III (j) which provides that "no employee shall be entitled to a job which he cannot or will not properly perform." Durham's ability to do a job is an objective fact

subject to arbitration. Whether an employee is qualified for seniority rights or has the ability to perform specified work are questions properly submitted to arbitration and the decision in this case was a permissible one and was not a plain mistake within the meaning of RSA 542:8.

The plaintiffs' contentions concerning the awards in the Sears, Corriveau and Taylor cases fall into the same category. In each instance the plaintiffs contend that the employee was "not qualified" or that he was not entitled to the relief granted by the Board of Arbitration. These were all questions of fact and contract interpretation within the confines of the Arbitration Board and were not subject to retrial and relitigation in the Superior Court.

The plaintiffs are correct in their contention that the proviso in the arbitration clause prevents the Arbitration Board from disregarding the terms of the contract or establishing new terms of employment or rendering awards according to their notions of modern "industrial jurisprudence" without regard to the collective bargaining agreement. This they cannot do. But this does not mean that the proviso that the Arbitration Board may render no decision that "conflicts with or exceeds the scope of the Agreement" necessarily reserves all questions of interpretation of the collective bargaining agreement exclusively for the court. Such a narrow and restricted meaning to the proviso would be at variance with well-established bargaining practices and defeat the primary purpose of arbitration awards. Scoles, Review of Labor Arbitration Awards on Jurisdictional Grounds, 17 U. Chi. L. Rev. 616 (1950); Summers, Judicial Review of Labor Arbitration, 2 Buffalo L. Rev. 1 (1952). "The arbitrator's incapacity to contract for the parties does not detract from his power to determine to what they have contracted." *Mack Mfg. Co.* v. *International Union*, 368 Pa. 37, 42, 43. See Shulman, Reason, Contract, and Law in Labor Relations, 68 Harv. L. Rev. 999 (1955).

It is to be remembered that the parties to this dispute have by agreement adopted statutory arbitration (RSA ch. 542) as a means of fact-finding and contract interpretation over a wide area of potential disputes relating to "wages, hours of work and all other conditions of employment . . . . " For this reason "frequent judicial interference with awards is a paralyzing blow to the healthy functioning of the arbitral process." Jones, The Nature of the Court's "Jurisdiction" in Statutory Arbitration Post-Award Motions, 46 Calif. L. Rev. 411, 437 (1958). Consequently a court

should not be too hasty to conclude that an award is the result of plain mistake or that the arbitrators have exceeded their powers. Kharas & Koretz, Judicial Determination of the Arbitrable Issue in Labor Arbitration — Some Recent Developments, 7 Syracuse L. Rev. 193, 205 (1956).

Fifteen years ago L. Hand, J. went to the nub of the matter in American Almond Products v. Consolidated Pecan Sales, 144 F. (2d) 448, 451 (2nd Cir. 1944): "Arbitration may or may not be a desirable substitute for trials in courts; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery." We conclude that the disputes in the present cases were subject to arbitration and were not the result of plain mistake, and the awards did not "conflict with or exceed the scope of the Agreement."

A more troublesome question is presented by the plaintiffs' contention that the Arbitration Board exceeded its powers since it considered three claims (Sears, Corriveau and Taylor) that were not submitted on time and within the requirements of Article VIII (a) of the collective bargaining agreement. That arbitration clause provided: "(a) Any claim for alleged violation of this Agreement must be filed against the party not later than twenty (20) days after the date the alleged violation occurred, or was first known to have occurred . . . . "

Two employees, Sears and Taylor, did not present their claims within twenty days of the initial violation of the contract but the Arbitration Board treated each work week as a separate violation and limited the remedies to back pay for a period within twenty days of the notice of the claim. In Corriveau's case the question appears to have been whether a written claim was required; apparently an oral claim was presented within the twenty-day limit.

There is authority for the proposition that it is for the court and not the arbitrator to determine what are the procedural requirements for presenting claims to the Arbitration Board and whether the time limit has been satisfied in a particular case. Boston Mutual Life Ins. Co. v. Insurance Agents' Int. Union, 258 F. (2d) 516 (1st Cir. 1958). Aside from the fact that this case

is not a binding determination of our state law, there are factors which militate against its adoption. First, from the briefs in that case it would appear that the question was not argued and the issue was presented as one for the court to decide in favor of one party or the other. Secondly, it is difficult to see why procedural questions in handling grievances should not be as arbitrable as questions on the merits. Thirdly, the separation of procedure for preliminary issues from procedure for ruling on the merits does not serve any useful purpose. The sounder rule in our opinion is that preliminary and procedural matters relating to the processing of grievances are questions for the arbitrator to decide. There is substantial support for this view from responsible quarters. Gregory, The Law of the Collective Agreement, 57 Mich. L. Rev. 635, 647-649 (1959); Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1510-1511 (1959).

The answers to questions 1 and 2 are that the issues for the Superior Court are limited to whether when the face of the awards are examined in the light of the contract and the documents preliminary to the award (RSA 542:8), the arbitrators exceeded their powers or made a plain mistake; and that no factual issues are to be tried *de novo* in the absence of such mistake or excess of powers. The answer to the third question is that the contract, the awards and the supporting documents in these cases disclose no basis for a finding in the plaintiffs' favor.

*Remanded.*

All concurred.