NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Public Employee Labor Relations Board
No. 2013-497

APPEAL OF HILLSBOROUGH COUNTY NURSING HOME
(New Hampshire Public Employee Labor Relations Board)

Submitted:  June 26, 2014
Opinion Issued:  September 12, 2014

Carolyn M. Kirby, of Goffstown, by brief, for Hillsborough County Nursing Home.

Law Offices of Shawn J. Sullivan, PLLC, of Concord (Shawn J. Sullivan on the brief), for AFSCME, Local 2715.

LYNN, J.  The Hillsborough County Nursing Home (County) appeals the decision of the New Hampshire Public Employee Labor Relations Board (PELRB), which found that the County committed an unfair labor practice by refusing to participate in the arbitration of employment grievances filed by AFSCME, Local 2715 (Union), the union representing certain nursing home employees.  We affirm.

The following facts were found by the PELRB.  The County and the Union are parties to a collective bargaining agreement (CBA) that expired June 30, 2013.  In June 2011, the County notified certain nursing home employees, including Patricia Perkins, Diana Maurice, and Joan Gendron, that their positions would be eliminated in August 2011 due to budget reductions.  After

the employees exercised contractual "bumping rights," the County informed them of their new positions. Perkins and Maurice were moved into full-time positions in a different department with different work schedules, and Gendron was moved from a full-time position to a part-time position. The County also informed a fourth employee, Pamela Bennett, that her work schedule would change. All four employees filed grievances, asserting that the changes violated the CBA.

Article 16.1 of the CBA provides:

> [A] grievance is defined as a complaint or claim by an employee or group of employees in the bargaining unit or the Union specifying the names of the bargaining unit employees involved, the date(s) of the alleged offense(s) and the specific Contract provision(s) involved which arises under and during the terms of this Agreement.

Article 16.1 also contains a grievance procedure consisting of four steps: Step 1 – discuss the grievance with immediate supervisor; Step 2 – present written grievance to the Administrator; Step 3 – file written grievance with the Commissioners; and Step 4 – submit written request to the PELRB to appoint an arbitrator to resolve the grievance. Article 16.4 of the CBA provides: "If the grievance is not reported and/or processed within [the applicable time limits specified in the CBA], the matter shall be deemed waived and no further action will be taken with respect to such grievance unless both parties mutually agree to an extension of said time limits."

The parties failed to resolve the grievances, and in January 2012, the Union sent Request for Appointment of Arbitrator forms to the County. The County refused to arbitrate the grievances, alleging that the Union had failed to timely file them and follow the grievance procedure and that the grievances were therefore waived under Articles 16.1 and 16.4 of the CBA. Thereafter, both the Union and the County filed unfair labor practice complaints with the PELRB. After an evidentiary hearing, the PELRB found that the County committed an unfair labor practice when it refused to participate in arbitration because the CBA provides for final and binding arbitration. It further found that the County's timeliness and failure to follow grievance procedure defenses raised issues of procedural arbitrability that must be decided by an arbitrator. Accordingly, the PELRB found that the County committed an unfair labor practice and dismissed the County's unfair labor practice complaint.

On appeal, the County argues that the PELRB erred by: (1) refusing to rule on the threshold issue of the procedural arbitrability of the grievances; and (2) finding that the County committed an unfair labor practice. We address these arguments in turn.

2

RSA chapter 541 governs our review of PELRB decisions.  See RSA 273-A:14 (2010); RSA 541:2 (2007).  Under RSA 541:13 (2007), we will not set aside the PELRB's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable.  The PELRB's findings of fact are presumed prima facie lawful and reasonable.  RSA 541:13.  In reviewing the PELRB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record.  See Appeal of Dean Foods, 158 N.H. 467, 474 (2009).  We review the PELRB's rulings on issues of law de novo.  See Appeal of Portsmouth Regional Hosp., 148 N.H. 55, 57 (2002).

To address the issues before us, we must begin with a discussion of the distinction between "substantive arbitrability" and "procedural arbitrability." "Substantive arbitrability refers to whether a dispute involves a subject matter that the parties have contractually agreed to submit to arbitration."  Local 285 v. Nonotuck Resource Associates, Inc., 64 F.3d 735, 739 (1st Cir. 1995). "Procedural arbitrability, on the other hand, concerns such issues as . . . whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate."  Id. (quotation omitted).  The difference between substantive and procedural arbitrability has legal significance.  In Southwestern New Hampshire Transportation Co., Inc. v. Durham, 102 N.H. 169 (1959), we held that, while the scope of an arbitration clause in a collective bargaining agreement presents a question of law for the court (or, now, the PELRB) to decide, see Southwestern Trans. Co., 102 N.H. at 173, "preliminary and procedural matters relating to the processing of grievances are questions for the arbitrator to decide," id. at 178; see also Howsam v. Dean Witter Reynolds, Inc. 537 U.S. 79, 84 (2002) (stating that "presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability" (quotation and brackets omitted)); John Wiley & Sons v. Livingston, 376 U.S. 543, 557 (1964) (holding that questions concerning adherence to grievance procedure in a CBA should be decided by arbitrator); Bechtel Const. Inc. v. Laborers' Int. U. of N. America, 812 F.2d 750, 753 (1st Cir. 1987) (reasoning that alleged failure to properly adhere to each step of a grievance procedure presents "a classic question of 'procedural arbitrability' for the arbitrator to decide").

The County argues that the Union waived the underlying grievances because it did not follow the CBA's grievance procedure.  Relying on our decision in Southwestern, the PELRB decided that whether the Union properly adhered to the CBA's grievance procedure was an issue of procedural arbitrability and should be decided by the arbitrator.  The County does not dispute the PELRB's conclusion that these challenges involve matters of procedural arbitrability.  The County argues instead that, our holding in Southwestern notwithstanding, RSA 273-A:6, I (2010) grants the PELRB

3

statutory authority to decide issues of procedural arbitrability where, as here, the Union's demand for arbitration violates the CBA and, therefore, constitutes an unfair labor practice. Noting that "RSA 273-A:5's provision for unfair labor practice charges against a union did not exist in 1959 when this Court opined that procedural arbitrability is a question for an arbitrator to decide," the County contends that the Public Employee Labor Relations Act (PELRA) should be interpreted as effectively overruling our holding in Southwestern. It is true that the PELRA, RSA chapter 273-A, was not enacted until 1975, see Laws 1975, 490:2, :6, and that it granted the PELRB primary jurisdiction over all violations of RSA 273-A:5 (2010). See RSA 273-A:6, I. However, nothing in the text or purpose of the PELRA is at odds with our decision in Southwestern with respect to procedural arbitrability issues. Therefore, we conclude that the enactment of the PELRA has no effect on the continuing validity of our holding in that case that issues of procedural arbitrability are to be decided by the arbitrator.

In support of its argument that the PELRB should decide the issue of procedural arbitrability, the County also cites Appeal of Westmoreland School Board, 132 N.H. 103, 105 (1989), for the premise that "unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (Quotation omitted.) The County's reliance on Westmoreland is misplaced because at issue in that case was substantive arbitrability, not procedural arbitrability. In Westmoreland, a non-tenured teacher and the teachers association filed a grievance alleging that the teacher's non-renewal was a violation of a collective bargaining agreement provision that prohibited disciplinary discharges without just cause. Appeal of Westmoreland School Bd., 132 N.H. at 107. The collective bargaining agreement contained a grievance procedure, which included binding arbitration, for claims based upon alleged violations of the agreement. Id. at 106-07. The dispute between the parties was whether the provision of the agreement prohibiting disciplinary discharges without just cause also applied to contract non-renewals. Id. at 107. In order to guide the PELRB in determining whether a dispute such as the one at issue was arbitrable under the agreement's arbitration clause, we adopted the four principles outlined by the United States Supreme Court in AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 647-50 (1986):

> (1) arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit . . . ; (2) unless the parties clearly state otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator; (3) a court should not rule on the merits of the parties['] underlying claims when deciding whether they agreed to arbitrate; and (4) under the "positive assurance" standard, when a CBA contains an arbitration clause, a presumption of arbitrability exists, and in the absence of

4

any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.

Appeal of Westmoreland School Bd., 132 N.H. at 105-06 (quotations and brackets omitted). When we adopted these principles, we stated that "the first two provisions comport with existing law in our state." Id. at 106. This statement makes clear that the first two Westmoreland principles are consistent with our holding in Southwestern that "the scope of an arbitration clause in a collective bargaining agreement presents a question of law for the court." Southwestern Trans. Co., 102 N.H. at 173. In Westmoreland, we merely outlined the principles to be used to determine the scope of an arbitration clause in a collective bargaining agreement. Therefore, the Westmoreland principles dictate only how a court should address issues of substantive arbitrability. See Appeal of Westmoreland School Bd., 132 N.H. at 106. They do not speak to the issue of the procedural arbitrability of a dispute.

The County cites other cases that have applied the Westmoreland principles, but these cases also involved issues of substantive arbitrability. See Appeal of Police Comm'n of City of Rochester, 149 N.H. 528, 534 (2003); Appeal of Town of Durham, 149 N.H. 486, 487-88 (2003); Appeal of AFSCME Local 3657, 141 N.H. 291, 293-96 (1996). The United States Supreme Court has similarly held that the principles it outlined in AT&T apply to questions of substantive arbitrability and that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (quotation omitted).

Finally, the County argues that "[t]he PELRB's decision in Mountain View Nursing Home v. AFSCME Council 93, Local 3685 (PELRB Decision No. 2006-089) is directly on point and dispositive in this case." The County is correct that the facts in Mountain View mirror those of the present case and that, in Mountain View, a PELRB hearings officer did rule on issues of procedural arbitrability. See Mountain View Nursing Home v. AFSCME Council 93, Local 3685, PELRB Decision No. 2006-089, at 2-5 (PELRB June 1, 2006). However, as the PELRB observed, Mountain View was a hearings officer decision that was not subject to review by the PELRB. See N.H. Admin. Rules, Pub 205.01(c) (absent a request for review by the PELRB, a hearing officer's decision becomes final after thirty days). We agree with the PELRB that the decision in this case "represents the proper application of the law to the facts of this case."

In sum, we conclude that because a procedural challenge to arbitrability is a matter to be determined by the arbitrator in the first instance, the PELRB did not err in refusing to make a threshold determination as to the procedural arbitrability of the grievances in this case.

The County next argues that it did not breach the CBA because it was enforcing its contractual rights by refusing to arbitrate grievances that, it contends, the Union waived by failing to adhere to the grievance procedure. It is undisputed that a wrongful refusal to arbitrate a legitimate demand constitutes a breach of a collective bargaining agreement and an unfair labor practice. See School Dist. #42 v. Murray, 128 N.H. 417, 422 (1986); see also RSA 273-A:5, I(h).

Here, the County does not argue that the grievances at issue were not substantively arbitrable. Rather, its position is that the Union is procedurally defaulted because it failed to follow the CBA's grievance procedure. However, as explained above, procedural arbitrability issues are to be decided by the arbitrator; the assertion of such issues affords no basis for refusing to participate in arbitration. Accordingly, we hold that the PELRB did not err in determining that the County committed an unfair labor practice by refusing to arbitrate the grievances.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.