# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0656, <u>Appeal of Town of Goshen</u>, the court on August 19, 2015, issued the following order:**

Having considered the parties' briefs and oral arguments and the record submitted on appeal, we conclude that a formal written opinion is unnecessary in this case. The Town of Goshen (Goshen) appeals a declaratory ruling of the New Hampshire State Board of Education (Board), issued at the request of the Town of Lempster (Lempster), that the formula to apportion school operating and capital expenses, adopted by the Goshen-Lempster Cooperative School District (District) in March 2013, remains in effect, notwithstanding a February 2014 vote by the District to reconsider it. We affirm.

The record establishes the following facts. The District was created in 1954. Pursuant to the District's articles of agreement, amendments to the articles must be approved by "60% of the voters present and voting at an annual or special meeting of the [District]." The District's articles of agreement also require that "[b]efore being placed on the warrant, the proposed amendment shall be submitted to the [Board] for endorsement."

As of September 2008, the District apportioned school operating and capital expenses "on the basis of 50% on the most current equalized valuation" and "50% on the average daily [pupil] membership" (Formula A). <u>See</u> RSA 195:7, I(b) (2008). In February 2013, the District presented to the Board language to amend that formula to one that apportioned both operating and capital expenses solely on the basis of average daily pupil membership (Formula B). The Board endorsed the language, and the proposed amendment to change the District's apportionment formula from Formula A to Formula B was placed on the warrant for the District's March 9, 2013 annual meeting. <u>See</u> RSA 195:13 (2008) (providing that "every cooperative school district" must hold its annual meeting on dates "set forth in RSA 197:1"); <u>see</u> <u>also</u> RSA 197:1 (2008) (generally requiring that school districts hold their annual meetings in March). Sixty-five percent of the District's voters at the annual meeting approved the warrant article. <u>See</u> RSA 195:7, I(c) (2008). On March 10, the next day, Goshen unsuccessfully petitioned the District to convene a special meeting to reconsider the March 9 vote.

On October 24, 2013, the Board found that the change in the apportionment formula had been properly adopted. As a result, the Board issued "its certificate to the . . . District." <u>See</u> RSA 195:7, I(c) (requiring Board approval of apportionment formula not set forth by statute), :14 (Supp. 2014) (regarding certification of district taxes), :18, III(i) (2008) (regarding method by

which cooperative school district may review apportionment formula). Goshen did not object to, move for reconsideration of, or appeal the Board's October 2013 decision.

During this time, Goshen filed a petition for declaratory judgment in superior court requesting that the court invalidate the March 9 vote to change the apportionment formula from Formula A to Formula B. Goshen also sought a court order to require the District to hold a special meeting to allow a motion to reconsider that vote. The District filed a cross-petition requesting a declaratory judgment that RSA 195:8 (2008) precluded the special meeting requested by Goshen. See RSA 195:8 (providing that a cooperative school district may review its formula for apportioning costs only "after the expiration of the 5-year period measured from the date of the meeting at which the last change was made to the cost apportionment formula"). The trial court denied both parties' requests for declaratory relief. Ultimately, however, the court ordered the District to convene a special meeting to reconsider the warrant article that had changed the apportionment formula from Formula A to Formula B.

In February 2014, the District held the special meeting as ordered by the court. Fifty-six percent of the District voters at the February meeting approved the motion to reconsider. The District then voted to "form a study committee to see if the [District] will change the apportionment formula" and to require the committee to report to the District at its 2015 annual meeting.

In March 2014, Lempster filed with the Board a petition, requesting that the Board declare whether Formula A or Formula B was the correct apportionment formula to be used when determining Lempster and Goshen tax rates. The petition also requested the Board to declare that the February 2014 District vote on the motion to reconsider violated RSA 195:8 and that it violated the District's articles of agreement because it did not garner the requisite 60% majority. Goshen moved to dismiss Lempster's petition.

At its July 24, 2014 meeting, the Board voted to adopt an opinion from the New Hampshire Attorney General's Office that denied Goshen's motion to dismiss and concluded that Formula B was still in effect because, among other reasons, the February 2014 District vote violated RSA 195:8. The Board declined to rule upon whether the February 2014 District vote also was defective because it did not have the requisite 60% majority. Goshen unsuccessfully moved for reconsideration of the Board's decision, and this appeal followed. The court was informed at oral argument that Lempster and Goshen no longer comprise a cooperative school district.

RSA chapter 541 governs our review of Board decisions. See RSA 21-N:11, III (2012). Under RSA 541:13 (2007), we will not set aside the Board's order except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that it is unjust or unreasonable. The Board's findings of fact

are presumed prima facie lawful and reasonable.  See RSA 541:13.  In reviewing the Board's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the findings are supported by competent evidence in the record.  See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014).  We review the Board's rulings on issues of law de novo.  See id.

On appeal, Goshen first argues that Lempster was barred by the doctrines of res judicata and collateral estoppel from relitigating the issue of whether the motion to reconsider would or did violate RSA 195:8.  Whether either doctrine acts as a bar in this case is a question of law that we review de novo.  See Sleeper v. Hoban Family P'ship, 157 N.H. 530, 533 (2008) (res judicata); Appeal of Wingate, 149 N.H. 12, 14 (2002) (collateral estoppel).

"Spurred by considerations of judicial economy and a policy of certainty and finality in our legal system, the doctrines of res judicata and collateral estoppel have been established to avoid repetitive litigation so that at some point litigation over a particular controversy must come to an end."  Eastern Marine Const. Corp. v. First Southern Leasing, 129 N.H. 270, 273 (1987) (quotation omitted).  Res judicata precludes the litigation in a later case of matters actually decided and matters that could have been decided in an earlier case between the same parties for the same cause of action.  Sleeper, 157 N.H. at 533.  For res judicata to apply, three elements must be met:  (1) the parties to each case must be the same or in privity with one another; (2) the same cause of action must be before the court in each case; and (3) a final judgment on the merits must have been rendered in the first case.  Id.

Collateral estoppel bars a party to a prior action, or a person or entity in privity with that party, from relitigating any issue or fact actually litigated and determined in the prior action.  Cook v. Sullivan, 149 N.H. 774, 778 (2003).  For collateral estoppel to apply, three conditions must be met:  (1) "the issue subject to estoppel must be identical in each action"; (2) "the first action must have resolved the issue finally on the merits"; and (3) "the party to be estopped must have appeared as a party in the first action, or have been in privity with someone who did so."  Id. (quotations omitted).  "These conditions must be understood, in turn, as particular elements of the more general requirement, that a party against whom estoppel is pleaded must have had a full and fair prior opportunity to litigate the issue or fact in question."  Id. (quotation omitted).

We conclude that neither res judicata nor collateral estoppel applies because Lempster was not a party to the superior court action and was not in privity with the District.  We have found privity to exist between a non-party and a party when:  (1) a non-party "controls or substantially participates in controlling the presentation," id. at 779; (2) a non-party "authorizes a party in litigation to represent his or her interests," id.; or (3) there is a "pre-existing substantive legal relationship[ ]" between the non-party and party, such as that

3

between a property owner and his successor in interest, Sleeper, 157 N.H. at 533 (quotation omitted). There is no evidence in this case that Lempster controlled or substantially participated in controlling the District's participation in the superior court case. Nor is there any evidence that Lempster authorized the District to represent Lempster's interests in that case.

Moreover, although Lempster and the District have a pre-existing substantive legal relationship, the two are separate entities as a matter of law. Cf. City of Manchester Sch. Dist. v. City of Manchester, 150 N.H. 664, 671-72 (2004). In City of Manchester School District, we explained that, pursuant to "a comprehensive statutory scheme," individual school districts "exist as separate entities" from municipalities because school districts are "legally organized" as "corporations, with power to sue and be sued, to hold and dispose of real and personal property for the use of the schools therein, and to make necessary contracts in relation thereto" and because they "have extensive powers, including the power to raise money, procure land, build schoolhouses, obtain insurance, purchase vehicles and pay debts." Id. at 671 (quotations omitted); see RSA 194:2, :3 (2008).

This same rationale applies to cooperative school districts. By statute, each cooperative school district is also "a body corporate and politic with power to sue and be sued, to hold and dispose of real and personal property for the use of schools therein, and to make necessary contracts in relation thereto." RSA 195:6, I (2008). Cooperative school districts have the same "extensive powers" as individual school districts. City of Manchester Sch. Dist., 150 N.H. at 671; see RSA 195:6, I (providing that each cooperative school district has "all the powers . . . conferred and imposed upon school districts under the provisions of RSA 194").

In addition, "[t]he legislature has . . . created a state board of education that has the authority to manage, supervise and direct the public schools in the State." City of Manchester Sch. Dist., 150 N.H. at 671; see RSA 186:5 (2008). Under this comprehensive statutory scheme, just as individual school districts are separate legal entities from the towns in which they exist, so too are cooperative school districts separate legal entities from the school districts that comprise them.

Thus, we cannot conclude that "something in the relationship" between the District and Lempster "justifies holding the latter to the result reached in litigation in which only the former is named." Daigle v. City of Portsmouth, 129 N.H. 561, 572 (1987). Because we hold that Lempster was not in privity with the District in the superior court litigation, the superior court's order did not bar Lempster from requesting the Board to issue a declaratory ruling that the February 2014 vote on the motion to reconsider violated RSA 195:8.

Goshen next asserts that the Board erred when it determined that the March 2013 District vote survived the February 2014 vote to reconsider it. In

challenging this decision, Goshen explains that it "appears to be based both upon the '5-year rule,' and upon [the Board's] own October 2013 vote certifying that the District had – at its 2013 annual meeting – voted to alter its formula." (Bolding and underlining omitted.)  Goshen then argues that, to the extent that the Board relied upon its October 2013 vote, it erred.

Goshen has accurately characterized the Board's decision – it did rest upon the two rationales that Goshen identifies.  However, on appeal, Goshen challenges only one of the Board's two rationales:  the Board's reliance upon its October 2013 decision certifying the District's March 2013 vote.  Goshen does not contend that the Board misinterpreted or misapplied the "5-year rule" set forth in RSA 195:8 when determining that the February 2014 vote violated this provision.  Although Goshen asserts that the Board's decision is "fundamentally unjust because it constitutes an after-the-fact disenfranchisement of the District voters," the Board was bound by RSA 195:8.

Accordingly, because the Board gave two independent reasons for its decision, and Goshen has challenged only one of those reasons, Goshen has not met its burden of demonstrating that the Board's decision is unjust or unreasonable.  See RSA 541:13.  Thus, we uphold the Board's decision that the March 2013 change in the apportionment formula survived the February 2014 vote.  We decline to address Goshen's final argument regarding whether the February 2014 vote violated the 60% majority rule in the District's articles of agreement because the Board did not reach that issue.

Affirmed.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,
Clerk**