Dalianis, C.J.
The Dunbarton School District (Dunbarton) appeals a decision of the New Hampshire State Board of Education (Board) which determined that Dunbarton is liable to the Goffstown School District (Goffstown) for its proportional share of Goffstown’s obligation on a 20-year construction bond approved in 2001 for renovations to the Goffstown High School. We reverse.

I. Background

The pertinent facts follow. Enacted in 1963, RSA chapter 195-A allows the establishment of Authorized Regional Enrollment Area (AREA) schools. See Laws 1963, ch. 277. The purpose of the statute is “to increase educational opportunities within the state by encouraging the establishment of area schools in the receiving districts which will serve the receiving district and the sending districts throughout a natural social and economic region ... to permit efficient use of such area school facilities and to provide improved instruction.” RSA 195-A:2, I (2008). The statute sets forth detailed procedures for establishing an AREA plan, see RSA 195-A:3 (Supp. 2015), and for the periodic review of AREA plans and withdrawal of districts from the AREA, see RSA 195-A: 14 (2008).
Under the statute, an “ ‘[a]rea school’ ” is defined as “an authorized regional enrollment area school, which may be elementary or secondary, and which when approved . . . shall be the assigned school for all the resident elementary or secondary pupils of the school districts or portions thereof within the region which it is established to serve.” RSA 195-A:1, IV (2008). A “ ‘[s]ending district’ ” is defined as “any school district or portion thereof which sends its resident pupils to an area school located in a receiving district, paying tuition therefor to the receiving district.” RSA 195-A:1, V (2008). A “ ‘[r]eceiving district’ ” is defined as “a school district in which an area school is located.” RSA 195-A:1, VI (2008).
An AREA plan must include, among other things, a formula for the calculation of tuition. RSA 195-A:3, V(d) (Supp. 2015). “ ‘Tuition’ ” is defined *52 as “the sum of money which each sending district is obligated to pay to the receiving district to defray the cost of education” and “may include an annual rental charge per pupil.” RSA 195-A:1, IX (2008). “‘Annual rental charge per pupil’ ” is defined as “that additional payment included in tuition . . . which represents a fair charge for building occupancy. It may also include a fair charge for any debt service and reduction of principal, which may become due between date of bond issue and date of building occupancy.” RSA 195-A:1, X (2008).
In 1971, Goffstown, Dunbarton, and the New Boston School District entered into a written AREA plan pursuant to which Goffstown was designated the receiving school district and Dunbarton and New Boston were designated the sending school districts. The plan established an annual tuition rate that included a rental charge of two percent. At the time the parties entered into this AREA plan, the statute did not require that an AREA plan contain a term of duration. See Laws 1969; 347:2.
In 1998, the Goffstown Building Needs Study Committee recommended a $10 million plan for renovations and additions to the Goffstown High School and the development of plans for an additional elementary school. The Goffstown school board decided to delay putting the question to public vote for one year. In 1999, a similar renovation plan was recommended by the committee but it was defeated in March 2000. Thereafter, a High School Building Study Committee was formed and, subsequently, it proposed an $11,995,000 plan to renovate Goffstown High School.
In November 2000, a written memorandum was sent on behalf of the Goffstown School Board to the school boards of Dunbarton and New Boston, notifying them that “the Goffstown School District will be proposing a building project at the March 2001 School District Meeting. The total cost of the project is $11,995,000. The Board is proposing a 20-year bond. The project encompasses renovations and additions to the Goffstown AREA High School.” In March 2001, Goffstown voters authorized the Goffstown School District to issue bonds to raise $11,995,000 for the “Renovation/Addition Project” for the Goffstown AREA High School. See RSA 195-A:7 (2008) (“[T]he construction of additions or alterations to existing buildings ... shall be the responsibility of the receiving district_ A receiving district may borrow money for such purposes”).
In 1999, the legislature amended RSA chapter 195-A to require that AREA plans have a minimum term of 10 years “unless otherwise provided by mutual agreement of the school districts.” Laws 1999, 15:1. Accordingly, in January 2004, Goffstown, Dunbarton, and New Boston agreed to a new written AREA plan to replace the 1971 plan. The 2004 AREA plan established a term of 10 years, with July 1, 2004 as the start date. Among other things, the plan established an annual tuition rate that included a *53 rental charge of two and one-half percent effective July 1, 2005, to be recalculated based upon appraisals of the Goffstown middle school and high school buildings “performed every five years commencing in 2008.” The plan provided that “[o]n the effective date of this Agreement, any former AREA agreements between Goffstown, New Boston and Dunbarton shall become void.” In April 2004, the Board certified that the plan was “lawfully adopted.”
Before the 2014 expiration of the parties’ AREA plan, an AREA planning review board, comprised of representatives from each of the three participating school districts, reviewed the 2004 plan and discussed possible amendments to be included in a new plan. See RSA 195-A: 14, I. The review board subsequently submitted a proposed AREA plan that, with the Board’s approval, would be voted upon in all three districts at the 2018 annual school district meetings. In January 2018, the Board approved the amended AREA plan. At the same time, the Board approved a plan to form a new AREA school designating Bow as the receiving district and Dunbarton as the sending district. Dunbarton and Bow voters approved the Dunbarton/Bow AREA plan, and Dunbarton voters rejected the amended Goffstown/Dunbarton/New Boston AREA plan.
In January 2014, Goffstown requested a hearing before the Board to determine Dunbarton’s remaining obligation on the 2001 bond. At a pre-hearing conference, the parties agreed to submit memoranda on the legal issue of whether Dunbarton “is or is not responsible for capital costs after the expiration of the AREA Agreement.” After reviewing the parties’ written submissions, the hearing officer determined that, upon receiving notice from Goffstown in 2001 that it was going to renovate and make additions to the high school and was proposing a 20-year bond to finance the project, Dunbarton was required, pursuant to RSA 195-A:14, VI, to initiate a withdrawal study four months before the vote or it would remain obligated on the bond.
The hearing officer reasoned that, “[b]y initiating the withdrawal study, Dunbarton would have put Goffstown on notice prior to the bond as to the potential additional financial risk on the bond without Dunbarton remaining part of the AREA.” Thus, although the 2004 AREA plan expired June 30, 2014, “Dunbarton was clearly on notice back in 2001 that there was a twenty (20) year bond, and had the opportunity to initiate a withdrawal study at that point in time so that Goffstown would be on notice of the possible financial ramifications of Dunbarton withdrawing from the AREA.” Accordingly, the hearing officer recommended that the Board find that Dunbarton remains financially obligated with respect to the high school construction bond. The Board voted to accept the hearing officer’s *54 report and adopted his recommendation. Dunbarton’s request for reconsideration was denied, and this appeal followed.

II. Standard of Re view

RSA chapter 541 governs our review of Board decisions. See RSA 21-N:11, III (2012). Under RSA 541:13, a party seeking to set aside a decision of the Board has the burden of demonstrating that the decision “is clearly unreasonable or unlawful.” RSA 541:13 (2007). We will not disturb the Board’s decision, except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that it is “unjust or unreasonable.” Id. The Board’s findings of fact are presumed jrrima fade lawful and reasonable. Id. We review the Board’s rulings on issues of law de novo. See Appeal of Hillsborough County Nursing Home, 166 N.H. 731, 733 (2014).
To resolve the issues before us, we must engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. Favazza v. Braley, 160 N.H. 349, 351 (2010). In matters of statutory interpretation, we are the final arbiters of the legislature’s intent as expressed in the words of the statute considered as a whole. Id. In construing its meaning, we first examine the language found in the statute, and when possible, we ascribe the plain and ordinary meanings to the words used. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Strike Four v. Nissan N. Am., 164 N.H. 729, 735 (2013). We interpret statutory provisions in the context of the overall statutory scheme. Favazza, 160 N.H. at 351. Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent. See New Hampshire Health Care Assoc. v. Governor, 161 N.H. 378, 385 (2011).

III. RSA Chapter 195-A

The parties agree that three statutory provisions are dispositive of the issues raised on appeal: RSA 195-A:14, V and VI, and RSA 195-A:3, XI. Paragraph XI of RSA 195-A:3 is part of the procedure for establishing an AREA school. Under that procedure, a written AREA plan must be prepared and must include, among other things, “[t]he term of the agreement, which shall be for a minimum of 10 years unless otherwise provided by mutual agreement of the school districts consistent with the provisions of RSA 195-A:3, XI.” RSA 195-A:3, V(n). Paragraph XI, in turn, provides that
[a]n area plan . . . shall be valid for a minimum of 10 years unless otherwise provided by mutual agreement of the school districts. *55 The area plan may be renegotiated at the request of a sending or receiving district or extended for additional 10-year periods upon a mutual vote of each sending and receiving school district legislative body 2 years prior to the expiration of the area plan.
RSA 195-A:3, XI.
Paragraphs V and VI of RSA 195-A: 14 concern the “Review of Area Plan and Withdrawal of Districts.” RSA 195-A:14 (bolding omitted). Pursuant to RSA 195-A:14, “[a]fter the third anniversary of the date of operating responsibility,” either a sending or receiving district “may vote to undertake a study of the feasibility and suitability of a withdrawal from the area.” RSA 195-A:14, III. A study committee must be formed and, within 180 days, submit a report to the Board “that withdrawal is not feasible or suitable or a report that includes a withdrawal plan prepared in accordance with paragraph IV.” Id. A plan for the withdrawal of a district from an AREA must include, among other things, “[t]he liability of the withdrawing district for its share of any outstanding indebtedness of the area in accordance with paragraph V.” RSA 195-A: 14, IV(c). Paragraph V, in turn, provides that “[e]ach withdrawing sending district shall remain liable to the area, or to the receiving district in the case of dissolution of the area, for a rental charge, as determined by the area agreement, for the length of any outstanding bond issue.” RSA 195-A: 14, V.
Under RSA 195-A:14, four months before a vote on a bond issue for construction of new facilities or additions to an AREA school, a receiving district must notify a sending district of such pending vote, and the sending district may thereafter “initiate a withdrawal study.” RSA 195-A:14, VI. If the sending district does so and the voters in the sending district approve the withdrawal plan, “the sending district shall not be further obligated to any bonded indebtedness as a result of such bond issue.” Id.

TV. Appellate Arguments

Dunbarton argues that RSA chapter 195-A “envisions two possible endings to an area relationship: (1) withdrawal by one party; and (2) expiration of the area agreement.” It contends that “[e]ach method of termination is distinct and creates different consequences for the contracting parties.” According to Dunbarton, withdrawal “occurs during the term of an area plan,” and because of “the potential consequences to students of termination mid-stream in the term of an area plan, the statute lays out a detailed and deliberate process and requires Board input before withdrawal or dissolution may occur.” By contrast, “[e]xpiration . . . occurs simply because an area plan reaches its term.” That is what occurred with respect to the 2004 plan, “and the parties neither contracted for, nor does *56 the statute impose, any post-termination obligations upon either party.” Thus, Dunbarton argues, “it is only where an area relationship terminates . . . before the end of its term through ‘withdrawal’ that the statute imposes liability for payments on outstanding bond issues” pursuant to RSA 195-A:14, V. Consequently, “[t]he Board unlawfully and unreasonably categorized Dunbarton as a ‘withdrawing’ sending district because Dunbarton never withdrew; instead, the 2004 Contract expired by its terms and with it, any further obligation for Dunbarton to pay Goffstown.”
Goffstown argues that the Board “properly gave effect to the plain language of RSA 195-A:14, VI, which sets forth the clear statutory duty of a sending district to initiate a withdrawal study prior to a receiving district’s vote on a bond if the sending district wishes to avoid its financial obligation for the term of the bond.” Goffstown asserts that the statutory obligation imposed under RSA 195-A:14, VI “was not erased by the Amended Area Plan entered into in 2004 or the expiration of that plan in 2014.” According to Goffstown, not only does Dunbarton’s analysis render RSA 195-A:14, VI “meaningless,” it also “would lead to the absurd result that a receiving district could never incur new bond indebtedness during the term of an AREA plan with the assurance that a sending district would remain obligated for the full term of the bond.” Goffstown argues that, under Dunbarton’s analysis, “[a] sending district could remain silent and not initiate withdrawal, thereby leaving the false impression that it remained committed to the bond issue, yet simply walk away at the end of the term of the plan, leaving the receiving district the unanticipated burden of the remainder of the entire bond obligation.”
After briefing and oral argument, we invited the attorney general (State) to submit a brief as amicus curiae on behalf of the Board. The State asserts that “[t]he Board’s interpretation [of RSA 195-A:14] is consistent with the legislature’s intent that a receiving district be protected relative to its investments in an area school in the event of an area dissolution.” The State argues that, read together, RSA 195-A:14, V and VI require a sending district to remain liable for any outstanding bond issue following the expiration of an AREA agreement. According to the State, these two statutory provisions “together protect the relative interests of receiving districts and sending districts, respectively, when capital investments are made in area schools.” Paragraph VI “protects a sending district by allowing it to withdraw from an area if it does not wish to become liable on a bond issue being considered by the receiving district.” Paragraph V “protects a receiving district from becoming solely liable on an investment made in an area school established to serve pupils from both the sending district and receiving district.” Thus, the State argues that the phrase “withdrawing sending district” should be interpreted to include both school *57 districts that withdraw from an AREA before the AREA plan terminates, and those that choose not to extend an AREA plan and instead allow it to expire. The expiration of an AREA plan, the State contends, causes the AREA to dissolve, which, in turn, causes all of the districts to “withdraw” from what was the AREA.

V. Analysis

We agree with Dunbarton’s interpretation of RSA 195-A:14. The statute sets forth two scenarios under which a sending school district may withdraw from an AREA plan.
First, if, after three years of operation, a school district votes “to undertake a study of the feasibility and suitability of a withdrawal from the area,” a study committee submits a report to the Board that includes a “withdrawal plan,” the Board concludes that the plan meets the statutory requirements, and the withdrawing district votes in favor of the withdrawal plan, such vote “shall be conclusive evidence of the withdrawal of the district.” RSA 195-A:14, III, VII. Under this circumstance, the withdrawal plan must include “[t]he liability of the withdrawing district for its share of any outstanding indebtedness of the area,” including “a rental charge, as determined by the area agreement, for the length of any outstanding bond issue.” RSA 195-A:14, IV, V.
Second, if a sending district receives notice of a pending vote in the receiving district on a proposed bond issue for the construction of new facilities or additions to an AREA school, and the sending district initiates a withdrawal study in accordance with the statutory requirements before the vote in the receiving district, the sending district may withdraw if the voters in the sending district approve the withdrawal plan. See RSA 195-A:14, VI. Under this circumstance, the sending district “shall not be further obligated to any bonded indebtedness as a result of such bond issue.” Id.
 In contrast to those two scenarios, here, the parties’ AREA plan expired by its express term. Although the statute requires that AREA plans contain a term, see RSA 195-A:3, V(n), the statute does not impose any continuing obligations upon a sending district after the expiration of an AREA plan. See RSA 195-A:3, XI. Thus, the Board’s determination that Dunbarton was a “withdrawing sending district” when the parties’ AREA plan expired in 2014 is not supported by a plain reading of the statute. We will not consider what the legislature might have said or add language to a statute that the legislature did not see fit to include. See Strike Four, 164 N.H. at 735. The State argues that the expiration of the AREA plan caused the “dissolution” of the AREA and, thus, the “withdrawal” of all of the *58 districts from the AREA. Assuming without deciding that “dissolution” is intended to mean the same thing as “withdrawal” under the statute, whether the Goffstown/Dunbarton/New Boston AREA dissolved is not a determination that can be made upon this record.
 Our conclusion is also supported by the principle of statutory construction that “the expression of one thing in a statute implies the exclusion of another.” State v. Etienne, 163 N.H. 57, 73 (2011). The force of this principle “is strengthened where a thing is provided in one part of the statute and omitted in another.” 2A N. Singer & J.D. Singer, Statutes and Statutory Construction, § 47.23, at 417 (7th ed. 2007). But for the limited exception provided for sending districts in RSA 195-A:14, VI, the statute specifically provides that a sending district withdrawing from an AREA plan during the term of the plan remains obligated to pay a rental charge for the length of any outstanding bond issue. See RSA 195-A:14, V. Had the legislature intended to impose the same obligation upon the expiration of an AREA plan, it would have done so expressly.
Goffstown argues that “Dunbarton focuses on the wrong timeframe” and ignores the “key finding” of the hearing officer that “focused on the undisputed notice to Dunbarton of the Bond prior to the vote on the Bond in 2001, and Dunbarton’s failure to initiate a withdrawal study prior to the vote.” Given that the 1971 AREA plan did not contain a term of duration, Goffstown’s argument might be persuasive had the parties not entered into a new AREA plan in 2004. The 2004 plan between the parties, however, expressly states, in a section titled “Outdated AREA Agreements,” that “[o]n the effective date of this Agreement, any former AREA agreements between Goffstown, New Boston and Dunbarton shall become void.” (Underlining omitted.) We agree with Dunbarton that “[ujnlike withdrawal, the statute places no limitations or conditions upon expiration, but, instead, leaves it to the parties to contract for such contingencies.”
We conclude that pursuant to the plain language of the statute, Dunbarton was not a “withdrawing sending district” when the AREA plan between the parties expired in 2014, and, accordingly, we hold that the Board erred as a matter of law when it found that Dunbarton remains financially liable to Goffstown for its proportional share of the 2001 Goffstown High School construction bond.

Reversed.

Hicks, Conboy, and Bassett, JJ., concurred; Lynn, J., dissented.